**STATE of Minnesota, Respondent,**

v.

**Gary Seth PACKARD, Appellant.**

**No. C8–84–1499.**

Court of Appeals of Minnesota.

May 7, 1985.

722

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin County Atty., Vernon E. Bergstrom, Chief, Appellate Section, Michael Richardson, Asst. County Atty., Minneapolis, for respondent.

C. Paul Jones, Minnesota Public Defender, Heidi H. Crissey, Asst. Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and FORSBERG and LESLIE, JJ., with oral argument waived.

## OPINION

POPOVICH, Chief Judge.

Appellant appeals his convictions for attempted first degree murder, first degree assault, two counts of first degree criminal sexual conduct, and his 180 month sentence for the attempted murder conviction. Appellant claims numerous trial court errors. We affirm.

## FACTS

Appellant was convicted of attempted first degree murder, Minn.Stat. §§ 609.-185(1), 609.17, 609.11, first degree assault, Minn.Stat. §§ 609.221, 609.11, and two counts of first degree criminal sexual conduct, Minn.Stat. §§ 609.342(a), 609.342(e)(i), for the stabbing and sexual assault of Sue Ann Larson, a 12 year old girl, on December 16, 1983. The forty year old appellant knew Sue Ann and her mother, Sally Larson, for approximately five years. Appellant babysat Sue Ann on several occasions.

On December 16, 1983, appellant went to the Larson apartment to collect a $15.00 debt from Sally Larson. Sue Ann allowed appellant into the apartment to wait for her mother, and they watched television. Sandra Larson, Sally Larson's sister, visited the apartment to check on Sue Ann twice after appellant arrived. Appellant asked Sandra Larson for the money Sally Larson owed him so he could leave the "fucking brat."

After Sandra Larson's second visit, Sue Ann went into her mother's bedroom. Appellant followed her into the bedroom and put his hands around her throat. Sue Ann told appellant she was going to tell her mother he tried to kill her and went into the living room. Appellant went to the kitchen and returned with a butter knife. He waved the butter knife in Sue Ann's face and said, "You're not going to tell your mom I tried to kill you." Appellant forced Sue Ann into her own bedroom, struck Sue Ann on the face, and placed his hands over her mouth. Appellant then removed Sue Ann's slacks and underwear and inserted his finger into her vagina. Sue Ann passed out.

When Sue Ann regained consciousness, appellant was on top of her inserting something into her vagina. She fainted a second time. Sue Ann regained consciousness on her mother's bed and thought that she had been stabbed. She passed out a third time.

Sue Ann awoke in her own bedroom and saw a butter knife coming at her. She raised her right hand to ward it off but was stabbed in the hand and repeatedly in the chest. Appellant left the bedroom and returned with a sharp-edged knife which he used to stab Sue Ann in the throat.

Sally Larson returned to the apartment at 10:15 p.m., approximately 10 minutes after appellant had fled. Upon seeing her mother, Sue Ann said, "Mom, Gary knifed me." When Sally Larson asked "Gary who?," Sue Ann responded, "You know, the one you were going to buy a camera from." When the police arrived, Sue Ann could barely speak because she had lost approximately 2½ liters of blood and two of the stab wounds had punctured her lungs. She responded that "Gary" had done it.

On December 17, 1983, appellant called 911 to turn himself into the police. Appellant was arrested and transported to the Hennepin County Government Center for questioning. Minneapolis Police Investigator Hinchliff read appellant his *Miranda*

rights, and appellant indicated he understood those rights and was willing to talk. After talking about his lack of a permanent home, lack of employment and alcohol problem, appellant denied involvement in the attack. Appellant later stated, "I did it, I did it. Give me 60 years in jail. I want to go to jail right now." When asked what he did, appellant replied that he stabbed Sue Ann Larson.

On December 19, 1983, Minneapolis Police Investigator Searles presented a photographic display to Sue Ann. The photographs were of seven white males, 30 to 40 years old, who had similar facial hair and features. Before giving the display to Sue Ann, Searles told her that he was going to show her a group of photographs and that if she saw Gary, the man who had attacked her, she should tell him what number was under his photograph. Sue Ann picked out the photograph of appellant.

## ISSUES

1. Was the evidence sufficient to support appellant's convictions?

2. Did the trial court abuse its discretion by excluding expert testimony concerning memory impairment and mental status examinations?

3. Did the trial court err by admitting appellant's statements to the police?

4. Did the trial court err by admitting identification evidence?

5. Did the trial court abuse its discretion by sentencing appellant to a 180 month term for attempted first degree murder?

6. Is appellant entitled to have one of the two convictions for first degree criminal sexual conduct vacated?

7. Did error occur because a victim of sexual abuse was allowed to be a juror?

## ANALYSIS

### 1. *Sufficiency of evidence.*

[A]n appellate court reviewing a claim of insufficiency of evidence, is required to interpret the evidence in the light most favorable to the verdict and must assume that the jury disbelieved any testimony conflicting with the result reached. Def-

erence is given to jury verdicts and if the jury, giving due regard to the presumption of innocence and the state's burden of proving guilt beyond a reasonable doubt, could reasonably have found defendant guilty, the verdict will not be upset.

*State v. Parker,* 353 N.W.2d 122, 127 (Minn.1984) (citations omitted); *see also State v. Stokes,* 354 N.W.2d 53, 56 (Minn. Ct.App.1984). On the night of the attack, Sue Ann informed both her mother and Officer Grout that appellant attacked her. Sue Ann later identified appellant as her assailant from a photograph display. Appellant was not a stranger to Sue Ann because he babysat her. Sue Ann testified appellant attacked and stabbed her. Finally, appellant admitted to Investigator Hinchliff that he stabbed Sue Ann. The evidence is sufficient to sustain appellant's convictions.

### 2. *Exclusion of expert testimony.*

To be admissible, expert testimony must be helpful to the jury in reaching its decision:

The basic requirement of Rule 702 is the helpfulness requirement. If the subject of the testimony is within the knowledge and experience of a lay jury and the testimony of the expert will not add precision or depth to the jury's ability to reach conclusions about that subject which is within their experience, then the testimony does not meet the helpfulness test.

*State v. Saldana,* 324 N.W.2d 227, 229 (Minn.1982) (quoting *State v. Helterbridle,* 301 N.W.2d 545, 547 (Minn.1980)). The trial court has broad discretion in determining whether testimony by an expert should be admitted and will not be reversed unless it clearly abused its discretion. *See Dunshee v. Douglas,* 255 N.W.2d 42, 47 (Minn.1977).

Appellant sought to introduce expert testimony concerning memory impairment and mental status examinations. The expert could not formulate an opinion as to whether Sue Ann's memory was impaired when she identified appellant as her assailant to her mother and Officer Grout. The

expert was prepared to say Sue Ann's memory "could have" been impaired when she made the identifications because she was in hypovolemic shock and suffering head trauma. The expert was also ready to explain the components of a complete mental status examination. The proposed expert testimony would not have substantially aided the jury in deciding whether Sue Ann's memory was impaired. The trial court did not clearly abuse its discretion by excluding the expert testimony.

### 3. *Appellant's statements.*

■ In *State v. Ngoc Van Vu*, 339 N.W.2d 892 (Minn.1983), the Minnesota Supreme Court stated:

> Before the state can introduce incriminating statements made by a defendant during custodial interrogation, it has the burden of proving that defendant "knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." The rule in Minnesota is that the state has carried its burden of proof if it shows that the warning was given and defendant stated that he understood his rights. However, if there is other credible evidence indicating that the waiver was not "knowing and intelligent," the state must produce additional evidence and the trial court must make a subjective factual inquiry to determine * * * whether the waiver was effective.

*Id.* at 897–98 (citations omitted).

Appellant testified he was drunk when he called "911" to turn himself into the police and as a result could only remember bits and pieces of what occurred on the night of his arrest. Officer Hinchliff testified that appellant spoke coherently, did not slur his speech, did not stagger while walking and, in his opinion, was not intoxicated. The arresting officer also testified that, in his opinion, appellant was not intoxicated. The trial court's conclusion appellant was capable of making a knowing and intelligent waiver of his rights is supported by a fair preponderance of the evidence. The statements were properly admitted. *See State v. Kulseth*, 333 N.W.2d 635, 637 (Minn.1983).

### 4. *Identification evidence.*

■ Neither testimony concerning pretrial photographic identification nor in-court identification violates a defendant's right to due process unless, in light of the totality of circumstances, the pretrial photographic identification was so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification. *Manson v. Brathwaite*, 432 U.S. 98, 116, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977); *Simmons v. United States*, 390 U.S. 377, 384, 88 S.Ct. 967, 971, 19 L.Ed.2d 1247 (1968).

■ In a photographic display presented to Sue Ann three days after the attack, Sue Ann picked appellant's photograph. Investigator Searles' instructions were not suggestive because Sue Ann earlier identified her assailant as "Gary" to her mother and Officer Grout. The pretrial photographic and in-court identifications were properly admitted.

### 5. *Sentencing.*

■ Two bases justifying upward durational departures are (1) the victim's vulnerability due to age which is known to the offender, and (2) the fact the victim was treated with particular cruelty. *See Minnesota Sentencing Guidelines*, II.D.2.b..

Sue Ann was 12 years old when appellant attacked her. Appellant had known Sue Ann for five years. Appellant sexually assaulted Sue Ann and repeatedly stabbed her in the chest with a butter knife. Appellant then obtained a sharper knife which he used to stab Sue Ann in the throat. Appellant's presumptive sentence was 97 months. The trial court's imposition of a 180 month sentence was not an abuse of its discretion. *State v. Elkins*, 346 N.W.2d 116, 119 (Minn.1984); *State v. Rathbun*, 347 N.W.2d 548 (Minn.Ct.App.1984).

### 6. *Vacating of conviction.*

■ An appellate court will not determine whether a conviction should be vacated unless the issue is first presented to the trial court. *Ture v. State*, 353 N.W.2d 518, 522–23 (Minn.1984); *State v. Kemp*, 305

N.W.2d 322, 326 (Minn.1981). Since appellant did not raise the issue before the trial court, this court will not address it.

7. *Juror bias.*

Arguments made for the first time on appeal will not be considered. *In re Welfare of K.T.*, 327 N.W.2d 13, 16–7 (Minn.1982); *State v. Propotnik*, 355 N.W.2d 195, 199 (Minn.Ct.App.1984), *pet. for rev. denied*, (Minn. Dec. 20, 1984). Since appellant neither challenged the juror for cause nor peremptorily struck her, this court will not address the issue.

### DECISION

While appellant has raised a number of issues, he has shown no reversible error. The record is sufficient and the trial court did not abuse its discretion in permitting evidence or in sentencing.

Affirmed.