**In the Matter of Mary C. MELAS.**

**No. C9–85–887.**

Court of Appeals of Minnesota.

July 30, 1985.

John M. Lund, Minneapolis, for appellant.

Thomas L. Johnson, Hennepin County Atty., Richard P. Osborne, Asst. County Atty., Minneapolis, for respondent.

Considered and decided by POPOVICH, C.J., and PARKER and CRIPPEN, JJ., with oral argument waived.

## OPINION

CRIPPEN, Judge.

Melas appeals an order committing her for mental illness treatment. We affirm.

## FACTS

Appellant, age 28, is the mother of two children, a boy, age 10, and a girl, 18 months old. Two police officers came to appellant's duplex at about 8:00 a.m. on April 8, 1985, after a neighbor complained that Melas was yelling and screaming and her children were crying.

Police Officer Richard Pietrza testified that appellant's son had numerous bleeding cuts on his back, a scratched and swollen face, and a puffy nose. The boy said Melas woke him at about 6:00 a.m. by slapping him, and that she tried to smother him. The child said that Melas spoke of being told by a device in her ear to kill him.

Melas told Officer Pietrza that she had been in St. Mary's Hospital, and that a priest at St. Mary's had inserted an electrical device in her ears. She said the device instructed her to do things she did not want to do. Pietrza testified the duplex was "a complete disaster," with a bad odor and with half-eaten food everywhere. Stephanie Stanek, a long-time friend of Melas, testified that there were clothes, blankets, and toys everywhere in the duplex; that a table was piled with dishes and household articles, and that dirty dishes and ten plastic bags of dirty clothing were in the duplex.

The court-appointed examiner, psychologist Paul Boerger, concluded that Melas was mentally ill. He testified that her condition posed a danger of physical harm to her children, and that she was unable to adequately provide for her own needs. Due to her rigid denial system, and her refusal to cooperate with treatment, Boerger recommended involuntary hospitalization. Social worker Margaret Keating, Melas' caseworker during emergency hospitalization, testified that the treatment team found Melas defensive, and uncooperative with treatment efforts.

The trial court found that the mental illness of Melas posed a substantial likelihood of physical harm to herself, by reason of harmful living conditions in her duplex and her refusal of treatment. The court found that the condition posed a like danger to others, demonstrated by the abuse of her son. The trial court considered and rejected alternative dispositions which depended on appellant's voluntary action, and she was committed to Metropolitan Medical Center and Anoka State Hospital; if short-term treatment at Metropolitan Medical Center was insufficient, the treating physician was authorized to transfer Melas to Anoka State Hospital for long-term treatment.

Melas appealed, arguing the trial court had too little evidence for a finding that her condition posed a substantial likelihood of physical harm to herself or others, and that alternative dispositions should have been employed.

## ISSUE

Did the trial court have sufficient evidence to commit appellant as a mentally ill person?

## ANALYSIS

■ Involuntary commitment depends on evidence that a proposed patient has a substantial psychiatric disorder, that the disorder is manifested by instances of faulty perception and grossly disturbed behavior, and that the condition poses a substantial likelihood of physical harm to herself and others. Minn.Stat. §§ 253B.02, subd. 13, and 253B.09, subd. 1 (1984). Appellant disputes only the trial court's conclusion that she poses a danger to herself or others.

■ The record must also show that the trial court considered and found unsuitable all reasonable alternative dispositions. Minn.Stat. § 253B.09, subd. 1 (1984); *see Matter of Davis*, 371 N.W.2d 91 (Minn.Ct. App.1985). Melas also contends that evidence was insufficient to support a finding that voluntary treatment was not a suitable alternative.

■ The trial court's findings will not be set aside unless they are clearly erroneous. Minn.R.Civ.P. 52.01. When examining the record, we must keep in mind the

statutory requirement that supporting evidence be clear and convincing. Minn.Stat. § 253B.09, subd. 1.

1. The trial court's finding that appellant posed a substantial likelihood of harm to herself and others is supported by the record. Pietrza testified about the condition of Melas' duplex and injuries to her son. Stanek substantially confirmed the testimony about the duplex. Boerger testified Melas was a danger to her son and was unable to adequately provide for herself. There is no merit in appellant's assertion that the transcript contains "no evidence to support the conclusion that Mary Melas poses a danger of harm to herself or others, or that any such harm was likely to occur in the future."

2. Appellant argues the trial court should have ordered voluntary treatment. Voluntary alternatives were rejected due to Melas' lack of insight into her illness, and her inability to agree to voluntary treatment. The evidence showed that Melas denied the existence of mental illness and refused to cooperate with efforts to treat her. The trial court's rejection of alternatives is supported by the record.

### DECISION

The trial court properly found Melas mentally ill and committed her for treatment.

Affirmed.