In the Matter of the Alleged
Chemically Dependent Jack
GALUSHA.

No. CO–85–1099.

Court of Appeals of Minnesota.

Aug. 20, 1985.

Michael Jaksa, International Falls, for appellant.

David C. Johnson, Koochiching County Atty., International Falls, for respondent.

Considered and decided by POPOVICH, C.J., and FOLEY and LESLIE, JJ., with oral argument waived.

## OPINION

LESLIE, Judge.

Appellant, Jack Galusha, was committed to Central Mesabi Medical Center on March 22, 1985 and discharged from chemical dependency treatment on April 19. The trial court ordered him held in Moose Lake State Hospital on April 22, where he still remains, committed as a chemically depend-

ent person. Appellant seeks review of the commitment. We affirm.[1]

## FACTS

Galusha has a long history of alcohol abuse. He was treated for chemical dependency in 1982, and again in January of 1985. Both times, he resumed drinking upon discharge. A petition for commitment was filed March 15, 1985, and Galusha admitted he was chemically dependent and in need of in-patient treatment. By order on March 22, the trial court stayed commitment on condition Galusha complete out-patient treatment, abstain from all alcoholic beverages, and maintain sobriety. Additionally, Galusha was ordered to cease all abusive behavior directed towards his family. The very same day, Galusha purchased and drank alcohol and the stay of commitment was revoked.

Galusha remained in treatment at Central Mesabi Medical Center until discharge on April 19. He made minimal progress in treatment and his prognosis on discharge was "very guarded." Senior Chemical Dependency Counselor Ted Thordarson concluded Galusha had "not made a lasting commitment to sobriety." If Galusha did not remain sober, Thordarson recommended he be evaluated for long-term chemical dependency treatment at Moose Lake State Hospital.

After Galusha's discharge on Friday, April 19, he began drinking. His wife, from whom he is separated, testified at trial Galusha had obviously been drinking all afternoon by the time she saw him at 4:00 p.m. Friday. Appellant admitted he bought and drank alcohol on Saturday, April 20. On Sunday, appellant went to his wife's apartment and continued drinking. Appellant admitting buying more beer Monday and drinking it.

On Monday, April 22, the trial court, apparently believing Galusha had been provisionally discharged from treatment, revoked the "provisional discharge" and ordered Galusha held in Moose Lake State

Hospital. In fact, Galusha had been fully discharged without conditions. A new commitment petition was filed April 24. A preliminary hearing on the hold order was held on April 26. The trial court found Galusha would be a danger to himself and others if released and that he could not care for himself or maintain sobriety without supervision. The trial court ordered appellant held pending a hearing on the commitment petition.

At the May 7 commitment hearing, Jean Galusha testified appellant becomes violent and dangerous when drinking and that he drinks when hunting. Jean Galusha and appellant's son Douglas testified appellant is completely dependent on others to pay his bills and prepare meals. Appellant testified on his own behalf that he did not need treatment and would not drink if released. Galusha confirmed he suffers from pernicious anemia.

Court-appointed examiners Douglas Johnson and Burton Helleloid agreed Galusha is an alcoholic. Johnson testified continued drinking would worsen the bleeding Galusha already suffers and that he is a danger to himself. Helleloid agreed the anemia, coupled with deteriorating physical health and denial of any chemical dependency problem, made out-patient treatment inappropriate. Both examiners recommended in-patient treatment.

The trial court found Galusha is a danger to himself and cannot adequately function, that in-patient treatment is the only available alternative and no less-restrictive treatment is appropriate, and that continued drinking will exacerbate the anemia and may cause a fatal hemorrhage. Galusha was committed to Moose Lake State Hospital for six months.

## ISSUES

1. Was appellant properly held at the state hospital pending the commitment hearing?

---

1. Respondent was ordered to serve and file its brief by July 8, 1985, but failed to file any brief.

We consider this appeal on its merits pursuant to Minn.R.Civ.App.P. 142.03.

2. Was appellant properly committed to the state hospital as a chemically dependent person?

## ANALYSIS

■ 1. The trial court incorrectly believed Galusha was provisionally discharged from Central Mesabi Medical Center. Patients subject to commitment may be provisionally discharged subject to conditions or restrictions. Minn.Stat. § 253B.15, subd. 1 (1984). It appears the trial court believed Galusha to be restricted from alcohol use. In fact, the record establishes Galusha was fully discharged from commitment and there was no provisional discharge to be revoked. We need not reach appellant's argument that the trial court followed the wrong procedure for revoking a provisional discharge, since any procedure would be inappropriate in this case.

A proposed patient may be held for up to 72 hours if it is shown "that serious imminent physical harm to the proposed patient or others is likely unless the proposed patient is apprehended." Minn.Stat. § 253B.07, subd. 6. A proposed patient may not be held for more than 72 hours, excluding weekends and holidays, without a preliminary hearing. *Id.*, subd. 7(a). The parties, including the proposed patient, must receive 24 hours written notice of a preliminary hearing. *Id.* (b). The court may order a continued hold only if it finds "by a preponderance of the evidence, that serious imminent physical harm to the patient or others is likely" if the patient is released. *Id.* (d).

In this case, the trial court ordered Galusha apprehended and "returned to in-patient treatment at Moose Lake" on April 22. Counsel was appointed and notice of a preliminary hearing was given on Wednesday, April 24. A new petition for commitment was filed the same day.

■ At the preliminary hearing held Monday, April 26, Mike Galusha, another of appellant's sons, testified his father was drunk and verbally abusive to Jean Galusha over the weekend following discharge

from treatment. Appellant testified he is a switchman for the railroad, that he drank over the prior weekend, did not need treatment, and he would not drink if released. Galusha described himself as an alcoholic and said he became angry when drinking. The trial court found Galusha would be a danger to himself if released. That finding is not clearly erroneous. The testimony also supports a finding that Galusha's abusive behavior posed a likelihood of serious physical harm to others, including his family. Although Galusha was not properly taken into custody, he was afforded a preliminary hearing and properly held following that hearing.

2. Appellant argues the pre-petition screening report did not comply with statutory requirements, the evidence was insufficient to support a finding that he is chemically dependent, and the trial court made inadequate findings regarding the likelihood of harm and Galusha's ability to manage his affairs.

■ Appellant argues the pre-petition screening process did not comply with Minn.Stat. § 253B.07, subd. 1. It appears no interview was conducted with appellant and the report does not document the reasons no interview occurred. However, we have examined the record and find no indication that appellant objected to the pre-petition screening report at the preliminary hearing, by motion, or at the commitment hearing. The commitment order on appeal arose from the commitment petition, and not from the pre-petition screening report. Appellant may not, for the first time on appeal, attack the pre-petition process, where no objection was timely made in the trial court. *See State v. Packard*, 366 N.W.2d 721 (Minn.Ct.App.1985), *Westbrook State Bank v. Anderson Land & Cattle Co.*, 364 N.W.2d 416 (Minn.Ct.App.1985).

■ If the trial court finds, by clear and convincing evidence, that the proposed patient is chemically dependent and finds there is no suitable alternative to commitment, the trial court must commit the patient to the least restrictive facility which

can meet the patient's treatment needs. Minn.Stat. § 253B.09, subd. 1. Appellant does not assert there are alternatives to commitment or that a less restrictive treatment facility was appropriate. Instead, appellant focuses on the finding of chemical dependency.

■ A chemically dependent person is incapable of managing himself or his affairs due to habitual and excessive use of alcohol and his recent conduct, due to alcohol abuse, poses a substantial likelihood of physical harm to himself or others. The likelihood of harm may be shown by a recent attempt or threat of harm, recent serious physical problems, or failure to provide necessary food, clothing, shelter or medical care. Minn.Stat. § 253B.02, subd. 2.

■ The trial court found Galusha "cannot adequately function." Appellant argues the evidence does not support this finding and asserts there was insufficient evidence that he is incapable of managing himself or his affairs. The factual findings of the trial court will not be disturbed unless clearly erroneous. Minn.R.Civ.P. 52.01. In view of the substantial testimony and reports indicating that Galusha cannot manage his drinking or control his anger and aggressive behavior, that he remains extremely dependent upon family members to administer needed medication, pay his bills and care for him, and that his health is deteriorating, we agree appellant is incapable of managing himself and his affairs.

■ Appellant next argues the evidence does not support a finding that he poses a substantial risk of physical harm to himself or others. In fact, both examiners testified Galusha's alcohol abuse threatens his physical health. Dr. Johnson was concerned that internal bleeding would increase and Dr. Helleloid testified Galusha's health had already suffered to the extent he required in-patient treatment. By drinking against medical advice, Galusha, in effect, failed to provide for his own medical needs and actually suffered serious physical problems. The trial court specifically identified the risk of internal hemorrhage due to alcohol abuse and its effect upon Galusha's anemia. The evidence supports the trial court's finding that Galusha is a chemically dependent person.

## DECISION

Galusha was improperly apprehended, but the trial court properly concluded he should be held pending a hearing on the commitment petition. The trial court did not err in finding Galusha is a chemically dependent person.

Affirmed.