**STATE of Minnesota, Respondent,**

v.

**Osvaldo R. GONZALEZ, Appellant.**

**No. C6–86–2154.**

Court of Appeals of Minnesota.

June 9, 1987.

Review Denied July 15, 1987.

---

---

Hubert H. Humphrey, III, Atty. Gen., St. Paul, Thomas L. Johnson, Hennepin Co. Atty., Vernon E. Bergstrom, Chief, Appellate Section, Beverly J. Wolfe, Asst. Co. Atty., Minneapolis, for respondent.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. State Public Defender, Minneapolis, for appellant.

Considered and decided by POPOVICH, C.J., and STONE and MULALLY, JJ.,* with oral argument waived.

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. 6, § 2.

## OPINION

MULALLY, Judge.

Appellant Osvaldo Gonzalez was found guilty of first degree burglary, attempted criminal sexual conduct in the second degree, assault in the second degree, and criminal sexual conduct in the second degree. He was sentenced to concurrent prison terms of 24 months for first degree burglary, 21 months for criminal sexual conduct in the second degree, and 72 months for attempted criminal sexual conduct in the second degree. No sentence was imposed for assault in the second degree. On appeal, appellant claims his convictions should be reversed, or alternatively, he should be granted a new trial because the court erred in admitting evidence describing the truck appellant was in when apprehended, and the gun found in the truck. Appellant also claims there is insufficient evidence to support the convictions and requests the adjudication for assault in the second degree be vacated. We affirm.

## FACTS

In the early morning hours of July 12, 1986, appellant entered the home of Robert and Kim W. and fondled their seven year old daughter, K.W., in an upstairs bedroom. Appellant had previously visited the W.'s home on a number of other occasions when he was dating Sandra W., Kim W.'s sister. Sandra had temporarily lived with Robert and Kim from February through June 1986.

K.W. testified appellant touched her all over and kissed her between her legs over her clothes. K.W. recognized appellant because she had seen him on three other occasions.

After fondling K.W., appellant left the upstairs bedroom and went downstairs to the living room where Kim and her one year old daughter had fallen asleep. Kim awoke when she heard someone coming down the stairs and asked who was there, but received no answer. Finally, appellant replied, "It's Osvaldo." Kim questioned appellant as to why he was in the house, but he refused to explain. Kim told him her sister did not live with them anymore. Appellant responded by stating that he was not looking for her anyway.

Kim then heard K.W. calling for her. Kim went upstairs and K.W. told her that appellant had been touching her "in her private." Kim returned to the living room and made repeated demands for appellant to leave and threatened to get her husband. Appellant pulled out a gun and told Kim to take her clothes off. Kim refused, but appellant continued to point the gun at her and demanded she take her clothes off. This continued for approximately 45 minutes.

Appellant then began stomping his foot. K.W. heard the noise and came down the stairs because she thought appellant was hitting her mother. Kim asked appellant to let her put K.W. back to bed and went to the stairs. Once at the stairs, Kim whispered to K.W. to get her father and tell him Osvaldo had a gun. Kim remained downstairs. K.W. allegedly began screaming and went to wake up her father. Appellant became startled and tried to go out through the front door. Kim opened the door and appellant departed stating that he would be back. Kim then called the police.

The police received the call at 3:00 a.m. and arrived in several squad cars. One squad circled the area in search of appellant and received information that a Cuban male named Osvaldo had entered the victim's home carrying a gun. Approximately six to eight blocks from the scene, an officer observed someone in a pickup truck look back and duck down on the seat. Two officers approached the truck and saw appellant lying on the seat. The officers asked appellant to step out of the truck and they conducted a pat search.

After appellant was placed in the squad car, an officer returned to the truck and noticed the wing window on the driver's side was broken out and that there were no keys in the ignition and wiring was hanging down from the dash. The officer also observed a silver automatic pistol laying under the edge of the bench seat and found a hat and jacket which matched the clothing description they had been given. Ap-

pellant was taken back to the scene where he was identified as the man who had committed the offenses.

The following morning, Robert W. went outside his house to determine how appellant had entered their home. He found footprints outside one of the bedroom windows and the bathroom screen was peeled back. He also noticed there was dirt in the bathtub which is next to the window.

Appellant was charged with first degree burglary, assault in the second degree, attempted criminal sexual conduct in the first degree, which was amended at trial to attempted criminal sexual conduct in the second degree, criminal sexual conduct in the second degree, and unauthorized use of a motor vehicle.

Before trial the court granted a defense motion to sever the charge of unauthorized use of a motor vehicle because it would have entailed evidence that the pickup truck was stolen a couple days earlier. The trial court denied the defense motion in limine to exclude evidence that the truck had a broken window and had been started by touching two wires together under the dash. The court also denied the defense's motion to exclude evidence that the serial number on the handgun had been filed off.

At trial, Sandra W. testified she met appellant on November 1, 1985, and commenced a romantic relationship. She was pregnant at that time. In February, 1986, Sandra moved in with her sister. She delivered her baby on May 12, 1986, and was asked to move out of her sister's home on June 28, 1986, because she was using illegal drugs. Appellant was present on the day Sandra was asked to move out of the house. Sandra testified appellant had visited the W. residence on approximately 10 different occasions.

Appellant testified in his own defense. He claimed that during his relationship with Sandra, he visited the W. house between 40 and 70 times. He stated Kim had told him he was like one of the family and could visit the home whenever he wished. Kim testified she had never given appellant permission to enter the home whenever he wanted.

Appellant stated that on the night of the incident he met Sandra earlier at a bar where she allegedly told him she would wait for him at her sister's home after the bar closed. Sandra testified she neither saw appellant that day nor told him she would meet him at her sister's home.

Appellant claimed that upon arriving at the home, he entered through the unlocked back door and went downstairs to Sandra's former bedroom. He then went upstairs to the living room and spoke with Kim. He claims Kim told him Sandra had left the house around 8:00 p.m. Appellant testified he became angry and told Kim he was going to look around the house for Sandra. He claims he then went upstairs to K.W.'s room and saw someone sleeping who he thought was Sandra. He asserts he lifted the sheets and saw it was not Sandra so he put the sheet back down. The testimony at trial indicated K.W. was seven years old, about four feet tall and weighed approximately 40 pounds, whereas Sandra was approximately 5'3" and weighed more than 120 pounds.

Appellant stated that after he left K.W.'s room he returned to the living room and got into an argument with Kim about his refusal to claim paternity for Sandra's child. Sandra testified she never claimed appellant was the father of her child.

Appellant stated that when Kim asked him to leave, he left and walked back to the truck. He testified he was in the process of starting the truck with the two wires under the dashboard when the police arrived to arrest him.

Appellant acknowledged he had obtained the gun illegally. However, he claimed he was not carrying the gun at W.'s residence on July 12 and also denied telling Kim to take off her clothes and touching K.W.

Appellant was convicted of first degree burglary, attempted criminal sexual conduct in the second degree, assault in the second degree, and criminal sexual conduct in the second degree. Appellant was sentenced to concurrent executed terms of 24 months for first degree burglary, 21 months for criminal sexual conduct in the

second degree, and 72 months for attempted criminal sexual conduct in the second degree. The 72 month sentence was an upward double departure from the 36 month mandatory minimum sentence under Minn.Stat. § 609.11, subd. 5 (1986) because of appellant's violation of the victim's "zone of privacy." *See generally State v. Winchell*, 363 N.W.2d 747, 750 (Minn.1985); *State v. VanGorden*, 326 N.W.2d 633, 635 (Minn.1982). No sentence was imposed on the second degree assault conviction.

## ISSUES

1. Did the trial court abuse its discretion in admitting the evidence describing the truck appellant was in when apprehended and the gun found in the truck?

2. Was the evidence insufficient as a matter of law to sustain appellant's convictions?

3. Is appellant entitled to vacation of the adjudication for assault in the second degree because it was a lesser included offense of attempted criminal sexual conduct in the second degree?

## ANALYSIS

### I.

Appellant claims he was denied his due process rights to a fair trial because the court admitted, over defense's objection: (a) testimony that there were no keys in the truck ignition and that it had to be started by touching two wires together under the dash; (b) a photograph showing the truck's wing window on the driver's side was broken out; and (c) testimony that the serial number on the gun found in the truck had been obliterated. A decision whether to admit evidence rests within the discretion of the trial court and will only be reversed if the court abused its discretion. *State v. Ackerman*, 380 N.W.2d 922, 924–25 (Minn. Ct.App.1986).

The testimony and evidence concerning the apprehension of appellant in the truck and the description of the truck and gun was relevant information with probative value. The facts concerning appellant's departure from the home and the circumstances surrounding his arrest in the truck were disputed at trial. Appellant denied all charges and alleged he voluntarily left the home and returned to the truck parked eight blocks away. Appellant testified the truck had been parked there because it had run out of gas. Appellant also explained his conduct of ducking down in the truck when approached by the police by stating he was attempting to start the truck by touching two wires together under the dashboard. Appellant testified he had borrowed the truck from a friend. Under these circumstances, the probative value of the evidence concerning the description and condition of the truck outweighed its potential prejudice.

It also was not error to admit testimony describing the gun since the gun was identified as the gun appellant used to assault Kim. At trial appellant admitted that he had obtained the gun illegally. The trial court minimized any potential prejudice by giving specific cautionary instruction that the jury was not to convict appellant on the basis of an illegal purchase of the weapon. Appellant was not denied a fair trial by admission of the evidence describing the truck and gun. The jury was entitled to evaluate all relevant information surrounding appellant's apprehension.

### II.

Appellant claims his convictions should be reversed or, alternatively, should be granted a new trial because there is insufficient evidence to support his convictions. This court must view the evidence in a light most favorable to the verdict and assume the jury disbelieved any contradictory evidence. *State v. Parker*, 353 N.W.2d 122, 127 (Minn.1984). Evaluating the credibility of witnesses is the exclusive function of the jury. *State v. Pieschke*, 295 N.W.2d 580, 584 (Minn.1980). We conclude appellant's claim of insufficient evidence is without merit. The jury was in the best position to evaluate the credibility and testimony of the various witnesses. Minor inconsistencies concerning some details does not render the evidence insuffi-

cient. *See generally id.; State v. Best*, 370 N.W.2d 691, 694 (Minn.Ct.App.1985).

### III.

 Although appellant was not sentenced for the adjudication for assault in the second degree, he now requests the adjudication be vacated asserting it was a lesser included offense for the separate adjudication for attempted criminal sexual conduct in the second degree. We decline to address this issue since appellant did not first present the matter to the trial court. *See generally State v. Kemp*, 305 N.W.2d 322, 326 (Minn.1981); *State v. Packard*, 366 N.W.2d 721, 725–26 (Minn.Ct.App. 1985), *pet. for rev. denied* (Minn. July 17, 1985).

### DECISION

Appellant was not denied a fair trial. The trial court did not abuse its discretion in admitting evidence describing the gun and truck and there is sufficient evidence to sustain his convictions. We decline to address whether appellant's adjudication for assault in the second degree should be vacated.

Affirmed.