**In re: Victor HEURUNG, Sr.**

**No. C4-89-1051.**

Court of Appeals of Minnesota.

Oct. 17, 1989.

Peter L. Vogel, Rosenmeier, Anderson & Voge, Little Falls, for appellant.

Conrad I. Freeberg, Morrison County Atty., Samuel Wertheimer, II, Asst. County Atty., Little Falls, for respondent.

Heard, considered and decided by WOZNIAK, C.J., and FORSBERG and SHORT, JJ.

## OPINION

SHORT, Judge.

On appeal from a judgment of commitment as a chemically dependent person, Victor Heurung, Sr. argues that (1) the evidence is insufficient to support the trial court's finding that appellant is incapable of self-management, and (2) involuntary hospitalization is not the least restrictive alternative. We disagree and affirm.

## FACTS

Appellant admits that he has had a long history of significant problems with excessive use of alcohol and prescription drugs. On April 4, 1989, he assaulted his girlfriend. She suffered a cracked bone in her nose and required medical attention. Appellant was charged with fifth degree assault. On April 7, appellant was admitted to St. Gabriel's Hospital. He was subsequently transferred to St. Cloud Detox, where tests revealed appellant's blood alcohol level of .32. On April 20, appellant was again admitted to St. Cloud Detox but was later transferred to St. Gabriel's Hospital because of his violent and threatening behavior. Again, his blood alcohol level was .32.

On April 25, Morrison County petitioned for appellant's judicial commitment, alleging that appellant was a chemically dependent person. A hearing on the petition for commitment was conducted on May 9. In support of the petition, one expert signed a statement diagnosing appellant as suffering from chronic alcoholism and chemical dependency drug abuse. A court-appointed medical examiner also submitted a report supporting long-term commitment for appellant at Brainerd Regional Treatment Center. At the hearing, one medical expert testified that there were no less restrictive alternatives to long-term involuntary commitment, because other alternatives had been unsuccessful in the past. This expert witness also testified that appellant's drinking caused him to be unable to take care of himself and to exhibit violent behavior towards others. The expert testified that, on the date of appellant's last admission to the hospital, he was acutely dehydrated and had not eaten for the previous two or three days. Further, the expert testified that appellant was angry and threatening towards him during their last visit together.

Appellant's girlfriend testified at the hearing that on April 4, after drinking and taking Halcion, he punched her in the face four times with a closed fist, cracking a bone in her nose. She also testified that appellant had taken a knife out and had thrown it around the room. She testified that on other occasions over the past year, appellant had assaulted her when he was intoxicated. Two chemical dependency counselors diagnosed appellant as suffering from chronic chemical dependency and recommended long-term treatment. Both testified that out-patient treatment would be unsuccessful. Appellant testified that he drew "complete blanks" after taking a prescription drug, did not remember hitting his girlfriend on the evening of April 4, and believed out-patient treatment and attendance at Alcoholics Anonymous were viable alternatives to commitment. Following the hearing, the trial court ordered that appellant be committed to Brainerd Regional Treatment Center as a chemically dependent person.

## ISSUES

I. Does the record support the trial court's finding that appellant is incapable of self-management?

II. Did the trial court err by determining that involuntary commitment is the least restrictive alternative available to meet appellant's treatment needs?

## ANALYSIS

### I.

Involuntary commitment is justified when the proposed patient, due to the

habitual and excessive use of alcohol or drugs, is incapable of "self-management" and whose recent conduct "poses a substantial likelihood of physical harm to self or others." Minn.Stat. § 253B.02, subd. 2 (1988). The trial court's findings as to this determination will not be set aside unless clearly erroneous. *In re Melas*, 371 N.W.2d 653, 654 (Minn.Ct.App.1985); Minn. R.Civ.P. 52.01. When reviewing the record, however, we keep in mind the statutory requirement that supporting evidence must be clear and convincing. Minn.Stat. § 253B.09, subd. 1 (1988).

■ Appellant challenges the trial court's finding that he is incapable of self-management. Self-management is not statutorily defined, and the case law is almost nonexistent. A finding that a patient "cannot adequately function" has been held sufficient evidence that the patient is incapable of managing himself. *In re Galusha*, 372 N.W.2d 843, 847 (Minn.Ct. App.1985) (where the patient could not manage his drinking, could not control his aggressive behavior, remained dependent on family members to administer needed medication, pay his bills and care for him, and whose health was deteriorating). We view the concept as broader than the ability to pay bills. As used in Minn.Stat. § 253B.02, subd. 2, self-management refers to one's handling of the ordinary occurrences of daily life. One who "self-manages," performs the ordinary activities of daily life, copes with the ordinary stresses of daily life, and independently cares for oneself in the ordinary course of daily life.

In this case the evidence is clear and convincing that appellant is dependent on others in the community to care for him after excessive bouts with alcohol and drugs. When using alcohol and drugs, appellant repeatedly (a) failed to control his assaultive and threatening behavior; (b) failed to eat properly, which led to extreme dehydration; and (c) failed to stop drinking before reaching the dangerous level of blood alcohol concentration of .32. Appellant's behavior demonstrates an inability to manage himself due to chemical dependency and drug abuse. In our view, this evidence was clear and convincing and justifies the trial court's conclusion that appellant is a "chemically dependent person" as defined in Minn.Stat. § 253B.02, subd. 2.

## II.

■ Minn.Stat. § 253B.09, subd. 1 provides that the trial court, if it finds by clear and convincing evidence the proposed patient is a chemically dependent person, shall commit the patient to the least restrictive treatment program which can meet the patient's needs, provided there is no suitable alternative to commitment. The factors which led the trial court to conclude appellant is a "chemically dependent person" as defined in the statute justify the trial court's decision to commit him to Brainerd Regional Treatment Center. The record is replete with evidence that all previous efforts at out-patient treatment have been unsuccessful. Any less restrictive alternative, such as ordering appellant to receive treatment at an outpatient facility, would not ensure that appellant would remain off alcohol and on the proper level of prescription pain medication. The trial court's findings are supported by testimony and documents in the record.

## DECISION

■ Involuntary commitment to an appropriate treatment facility, though it temporarily restricts a patient's liberty, is intended to be therapeutic rather than punitive. *See In re Spence*, 434 N.W.2d 477, 478–79 (Minn.Ct.App.1989), *pet. for rev. denied* (Minn. Feb. 22, 1989). The trial court properly determined that (1) appellant was chemically dependent and as a result, was incapable of self-management and posed a substantial danger to himself and others, and (2) temporarily committing him to a regional treatment center is the best and least restrictive way to ensure he receives the care he needs. For these reasons, the trial court's order for judgment committing appellant to the Brainerd Regional Treatment Center is affirmed.

Affirmed.