*This opinion is nonprecedential except as provided by*
*Minn. R. Civ. App. P. 136.01, subd. 1(c).*

**STATE OF MINNESOTA**
**IN COURT OF APPEALS**
**A23-1077**

In the Matter of the Civil Commitment of:
Rakan Muhhammad Alam

**Filed December 26, 2023**
**Affirmed**
**Schmidt, Judge**

Beltrami County District Court
File No. 04-PR-23-944

Darla Nubson, Nubson Law Office, PLLC, Grand Rapids, Minnesota (for appellant)

David Hanson, Beltrami County Attorney, Taylor Tisdell, Assistant County Attorney, Bemidji, Minnesota (for respondent)

Considered and decided by Ross, Presiding Judge; Bratvold, Judge; and Schmidt, Judge.

**NONPRECEDENTIAL OPINION**

**SCHMIDT**, Judge

On appeal from a judgment of civil commitment as a chemically dependent person, appellant Rakan Muhammad Alam[1] argues the district court erred because: (1) the record does not support the conclusion that he is incapable of self-management due to habitual and excessive use of alcohol, (2) the record does not show that his alcohol use poses a

---

[1] The spelling of Alam's middle name is inconsistent in the record, and the correct spelling is "Muhammad" according to his appellant's brief, but the case caption cannot be changed on appeal. *See* Minn. R. Civ. App. P. 143.01.

substantial likelihood of physical harm to himself or others, and (3) the district court failed to make adequate findings of fact regarding less-restrictive alternatives. We affirm.

## FACTS

Respondent Beltrami County Health and Human Services[2] filed a petition for involuntary commitment of Alam on the basis that he poses a risk of harm to himself or others due to mental illness and chemical dependency. The petition arose from an incident in the early morning hours of April 5, 2023, in which Alam allegedly tried to force his way into his neighbor's apartment. Alam reportedly punched his neighbor's boyfriend and threatened to harm the man.[3] Police responded, and Alam reportedly fought with officers. Officers arrested Alam and the state charged him with fifth-degree assault, disorderly conduct, and obstructing legal process. The April 5 incident occurred within 24 hours after prior misdemeanor charges against Alam were dismissed by operation of law in accordance with Minnesota Statutes section 611.45 (2022), following a finding of incompetency.

In the petition for involuntary commitment, Beltrami County Health and Human Services alleged facts asserting Alam's excessive alcohol use. The petition was based on the April 5 incident as well as a series of earlier events that we briefly summarize here.

In December 2022, Adult Services at Beltrami County Health and Human Services performed an assessment of Alam and determined that he met the Diagnostic and Statistical

---

[2] Beltrami County did not file a responsive brief on appeal. *See* Minn. R. Civ. App. P. 142.03 (providing if respondent fails to file a brief, the case will be decided on the merits).

[3] Alam disputes this representation of the events and claims that his neighbor's boyfriend assaulted him after trying to "get into his life."

Manual of Mental Disorders (DSM-V) criteria for substance use disorder. The assessment recommended that Alam abstain from alcohol, participate in treatment coordination, and successfully complete a residential treatment program. The petition for involuntary commitment alleged that Alam did not follow those recommendations.

In March 2023, following multiple misdemeanor charges for improper calls to emergency services, the district court ordered a competency evaluation pursuant to Minn. R. Crim. P. 20.01. During the evaluation, Alam admitted to drinking about seven beers per day, but did not believe he had a substance use problem. The evaluating doctor opined that Alam had a delusional disorder, persistent depressive disorder, and alcohol-use disorder; concluding that Alam was mentally ill, but not cognitively impaired. The evaluating doctor also suggested that Alam should be admitted to a facility where he could be treated for his disorders. As a result of the evaluation, the district court found Alam incompetent and the state dismissed the misdemeanor charges. *See* Minn. Stat. § 611.45, subd. 3(a) (providing misdemeanor charges must be dismissed if the court finds the defendant incompetent).

Prior to filing the involuntary commitment petition, Beltrami County Health and Human Services conducted a pre-petition screening of Alam. The pre-petition screening report concluded that Alam met the definitions of a chemically dependent person and of a person who poses a risk of harm due to a mental illness. Specifically, the report found that Alam drinks alcohol daily and he "has no interest in stopping and does not see the need for treatment." The report further found Alam's "drinking has led to physical altercations, the last one resulting in his arrest for 5th degree assault." The pre-petition screening also noted that Alam relies on family for financial support and for assistance in paying bills.

3

The court-appointed examiner, Dr. James Alsdurf, subsequently filed a report of his examination of Alam. Dr. Alsdurf's report found that Alam had acknowledged constant and chronic alcohol abuse but noted Alam "has failed to seek or maintain treatment for his mental illness and currently lacks the capacity to care for himself at this point."

At Alam's request, the district court appointed Dr. Charles Chmielewski to conduct an independent examination of Alam. Dr. Chmielewski found that Alam "seems to be having a lot of difficulty managing his life," "sustaining any employment, [and] managing his finances." Dr. Chmielewski opined that the evidence was not "clear and convincing" regarding a mental illness commitment, but concluded that Alam's alcoholism is "clear and convincing." Dr. Chmielewski recommended a chemical dependency commitment:

> [Alam] is in denial with regard to his alcoholism, and has made it clear that he isn't going to address this problem voluntarily. The alcoholism has no doubt made it very difficult for him to manage his life, and has allegedly led to some threatening remarks toward family members on the phone, and then resulted in the assault charges and his return to jail later that same night. I would recommend a six month [chemical dependency] commitment, with inpatient [chemical dependency] treatment followed by mandated follow up services in the community.

At the civil-commitment hearing in May 2023, both examining doctors testified. Dr. Alsdurf testified consistent with his report. Dr. Alsdurf also opined that an inpatient program is necessary to adequately treat Alam. Dr. Chmielewski testified that in his opinion Alam is not mentally ill, but also opined that Alam poses a substantial likelihood of harm to himself due to his chemical dependency. Dr. Chmielewski further opinioned that Alam could not adequately address his chemical dependency issues on an outpatient

basis and concluded that the least-restrictive option would be for Alam to be committed to an inpatient facility.

In its findings of fact and conclusions of law, the district court rejected the state's request for civil commitment based upon mental illness. The district court found, however, that "[b]ased upon the testimony offered by the examiners at the hearing, as well as the related criminal files, documents, and records," there is clear and convincing evidence to support that Alam is a chemically dependent person as defined under Minnesota Statute section 253B.02 (2022). The district court continued that Alam "is a danger to [himself], or others as demonstrated by the underlying criminal charges and [Alam's] failure to obtain necessary food, clothing, shelter, safety, or medical care due to being chemically dependent." The district court also noted that because of Alam's alcohol use, he "poses a substantial likelihood of physical harm to self or others as demonstrated by his recent attempt or threat to physically harm self or others that occurred on or around April 5, 2023, and for which [Alam] was ultimately arrested and criminally charged." Regarding less-restrictive alternatives, the district court stated:

> The criminal court ordered [Alam] to complete a chemical use assessment and follow all recommendations. The chemical use assessment recommended that [Alam] enter into inpatient treatment. [Alam] failed to comply with those recommendations and did not enter inpatient treatment. [Alam] instead continued to use alcohol and incurred additional criminal charges as a result of his chemical use. [Alam's] failure to seek any sort of treatment despite having this requirement imposed upon him by the criminal court, shows that he is unable or unwilling to comply with voluntary treatment.

As a result, the district court granted the petition. Alam appeals.

**DECISION**

Involuntary commitment is justified where the district court finds by clear and convincing evidence that the proposed patient is a person who has a chemical dependency and there is no suitable alternative to commitment. Minn. Stat. § 253B.09, subd. 1(a) (2022); *In re Galusha*, 372 N.W.2d 843, 846-47 (Minn. App. 1985). The statute defines a "chemically dependent person" as any person "determined as being incapable of self-management or management of personal affairs by reason of the habitual and excessive use of alcohol . . . and . . . whose recent conduct as a result of habitual and excessive use of alcohol . . . poses a substantial likelihood of physical harm to self or others[.]" Minn. Stat. § 253B.02, subd. 2.

The district court's findings related to a determination that a person is chemically dependent will not be set aside unless clearly erroneous. *In re May*, 477 N.W.2d 913, 915 (Minn. App. 1991). The supreme court has stated that the clear error standard of review "is a review of the record to confirm that evidence exists to support the decision." *In re Civ. Commitment of Kenney*, 963 N.W.2d 214, 222 (Minn. 2021). "When the record reasonably supports the findings at issue on appeal, it is immaterial that the record might also provide a reasonable basis for inferences and findings to the contrary." *Id.* at 223 (quotation omitted). In applying the clear error standard of review, appellate courts (1) view the evidence in the light most favorable to the findings, (2) do not reweigh the evidence, (3) do not find their own facts, and (4) do not reconcile conflicting evidence. *Id.* at 221-22. Accordingly:

6

> [A]n appellate court need not go into an extended discussion of the evidence to prove or demonstrate the correctness of the findings of the [district] court. Rather, because the factfinder has the primary responsibility of determining the fact issues and the advantage of observing the witnesses in view of all the circumstances surrounding the entire proceeding, an appellate court's duty is fully performed after it has fairly considered all the evidence and has determined that the evidence reasonably supports the decision.

*Id.* at 222 (quotations and citation omitted). We review de novo the legal question of whether the facts found by the district court satisfy the statutory criteria for commitment. *In re Civ. Commitment of Spicer*, 853 N.W.2d 803, 807 (Minn. App. 2014).

## I. The district court did not err in concluding Alam is incapable of self-management due to chemical dependency.

Alam argues that the district court clearly erred in the findings of fact by finding that he is incapable of self-management due to his alcohol use. Alam further argues the district court erred in using those findings to support its conclusion of law that the statutory criteria for commitment was met. We disagree.

"Self-management" is not statutorily defined. *See* Minn. Stat. § 253B.02. This court has previously held that, as used in section 253B.02, subdivision 2, self-management refers to "one's handling of the ordinary occurrences of daily life." *In re Heurung*, 446 N.W.2d 694, 696 (Minn. App. 1989). "One who 'self-manages,' performs the ordinary activities of daily life, copes with the ordinary stresses of daily life, and independently cares for oneself in the ordinary course of daily life." *Id.*

A district court's finding that a patient cannot adequately function constitutes sufficient evidence that the patient is incapable of managing himself. *Id.* (quotations

omitted). We have affirmed a district court's finding that a patient cannot adequately function where the evidence indicates the patient cannot manage his drinking or control his anger and aggressive behavior, remains extremely dependent upon family members to pay his bills and care for him, and that his health is deteriorating. *Galusha*, 372 N.W.2d at 847.

Alam acknowledges that the record contains evidence that he relied on his family to pay his bills but argues that finding is insufficient because there is "no evidence that he was unable to handle the ordinary occurrences of daily life." While self-management is "broader than the ability to pay bills," the ordinary occurrences of daily life still include the ability to pay bills. *See Heurung*, 446 N.W.2d at 696. The evidence in the record supports the district court's finding that Alam appears wholly reliant on his family to perform that for him.

The district court's finding that Alam is incapable of self-management is also supported by Dr. Chmielewski's concerns that Alam "seems to be having a lot of difficulty managing his life," "has had much difficulty sustaining any employment, or managing his finances," and that the amount of alcohol Alam consumes would "[c]ertainly . . . have deleterious effects on one's capacity to manage their life[.]" Thus, the record evidence demonstrates that the district court did not clearly err in finding that Alam was incapable of self-management due to his alcohol use.

**II.    The district court did not clearly err in finding Alam's chemical dependency poses a substantial likelihood of physical harm to himself or others.**

Alam argues that the district court clearly erred in finding he is a "danger" to himself or others. Alam contends the record does not support the court's finding and, as such, the court erred in granting the civil-commitment petition.

A substantial likelihood of physical harm may be demonstrated by a recent attempt or threat to physically harm self or others, evidence of recent serious physical problems, or a failure to obtain necessary food, clothing, shelter, or medical care. Minn. Stat. § 253B.02, subd. 2. The statute requires only that a substantial likelihood of physical harm exists, not that the individual has, in fact, physically harmed himself or others. *See id.*

In arguing for reversal, Alam focuses on the district court's finding that it had "no reason to disbelieve" Alam's version of events related to whether a criminal physical assault occurred. While the altercation on April 5, 2023, may not have been a criminal assault according to Alam's version of events, it still provided support for the district court's finding that the altercation represented a recent threat of physical harm to Alam or others as a result of his "habitual and excessive use of alcohol."

Alam's physical altercation in April 2023 constituted a recent attempt or threat to harm himself or others sufficient to support a finding that Alam's chemical dependency poses a substantial likelihood of physical harm to himself or others. The district court did not clearly err in its findings of fact or err in its conclusion of law.

**III.    The district court adequately considered less-restrictive alternatives.**

Finally, Alam argues the district court did not adequately consider less-restrictive alternatives. We disagree.

If the district court orders commitment, the court must make findings that "identify less restrictive alternatives considered and rejected by the court and the reasons for rejecting each alternative." Minn. Stat. § 253B.09, subd. 2(b) (2022). We review a district court's findings regarding the least restrictive treatment program for clear error. *In re Thulin*, 660 N.W.2d 140, 144 (Minn. App. 2003).

We have previously affirmed a commitment order where both examiners recommended inpatient treatment and the appellant had failed to cooperate with voluntary treatment. *See In re Redcloud*, 359 N.W.2d 710, 712 (Minn. App. 1984). In such circumstances, we concluded that less-restrictive options than inpatient treatment were foreclosed. *Id.* Further, where previous treatment efforts have been unsuccessful, alternatives less restrictive than commitment would not ensure that the individual would remain off alcohol. *See Heurung*, 446 N.W.2d at 696; *May*, 477 N.W.2d at 916.

Here, both experts opined that Alam required inpatient treatment and both agreed this constituted the least-restrictive alternative available. The record also supports the district court's finding that Alam had not complied with previous treatment despite recommendations to do so after a court ordered a rule 25 evaluation. The district court properly found that commitment to the Commissioner of Human Services is the least-restrictive alternative that meets Alam's needs.

**Affirmed.**

10