**STATE of Minnesota, Respondent,**

v.

**Kenneth D. ELKINS, Appellant.**

**No. C3–83–556.**

Supreme Court of Minnesota.

March 23, 1984.

C. Paul Jones, State Public Defender, Mark F. Anderson, Asst. Public Defender, Minneapolis, for appellant.

Hubert H. Humphrey III, Atty. Gen., St. Paul, Stephen Rathke, Crow Wing County Atty., Brainerd, for respondent.

AMDAHL, Chief Justice.

This is an appeal from judgment of conviction that raises only a sentencing issue.

Defendant was found guilty by a district court jury of a charge of assault in the second degree, Minn.Stat. § 609.222 (1982) (assault with a dangerous weapon). The conviction was based on defendant's use of a rung from a wooden chair to severely beat the 6-year-old son of the woman with whom he was living. The presumptive sentence for the offense (severity level VI) by a person with defendant's criminal history score (five) is an executed prison term of 54 (50–58) months in prison. Defendant had a number of prior convictions but none was for a crime against a person and therefore the presumptive sentence was concurrent, not consecutive. Minnesota Sentencing Guidelines and Commentary, II.F. (1982). The statutory maximum for the offense in question is 5 years (60 months) in prison. *See* Minn.Stat. § 609.222 (1982). The prosecutor recommended imposition of a 54-month term with sentence running concurrently with the prior sentence. Defense counsel recommended imposition of a 50-month concurrent sentence. The trial court imposed the maximum presumptive sentence, 58 months, and ordered that it run consecutively to the prior sentences. The prior sentences ran concurrently with each other, the maximum being 21 months in duration. This means that instead of being subject to a 58-month term, defendant is subject to a maximum of 79 months in prison (52⅔ months with good time credit).

After defendant filed his brief, the prosecutor agreed to stipulate to a modification of defendant's sentence so that it would run concurrently, not consecutively. Since a trial court is free to depart upward on its own motion and without the consent of the prosecutor, we denied the motion. After the motion was denied, the prosecutor filed a brief in which he states that he agrees with the arguments contained in the defendant's brief.

Apparently there is no trial transcript. We, therefore, have to rely solely on the other papers in the record on appeal, including the police reports, the confession of defendant, the presentence investigation report, and the transcript of the sentencing hearing. Since defendant is appellant, he has the burden of establishing on appeal that the record does not support the trial court's decision to depart.

The police reports in the file indicate that on October 16, 1982, the mother of the victim appeared at the police station and said that she wanted to talk with an officer. She then introduced her son, age 6, and said that while bathing him she noticed that his buttocks were black and blue. She said that upon questioning him he said that an employee at the school, whose first name she gave, had whipped him with a belt. The boy gave the same story to the police. The mother and the boy denied that defendant, who was living with them after being recently released from jail, had administered the blows but they said that other marks on the boy's body had come from defendant's roughhousing with him. Defendant remained in the car outside the police station while this report was being given.

The boy was taken to the hospital and examined. Pictures taken at the hospital demonstrate that the beating administered to the boy was a serious one.

Police learned the full name of the school employee, and interrogated him at the police station. He cooperated fully with the police and denied that he had beaten the boy or ever abused any children at school. The principal also spoke highly of the employee.

On October 17 the doctor indicated to the police that the boy should stay in the hospital at least 3 more days, but the boy's mother seemed anxious to have him released. Police talked with defendant at the hospital. He denied beating the boy and said that the boy had claimed that the school employee had beaten him. Defendant also named his own mother and a neighbor as possible suspects. Defendant's mother had acted as the boy's babysitter on a number of occasions.

Later that day police talked with the boy alone and said that they thought he was lying. He changed his story and said that he had been trying to protect defendant, whom he referred to as "Daddy." He then said that defendant had beaten him and that defendant and his mother had helped him concoct the story about the school employee.

Defendant, who was 21 at the time, was questioned at the police station that night. He confessed to causing the terrible bruises on the boy, saying that the mother and he had been fighting and that he took out his anger on the boy. He claimed that certain marks on the boy's eyes were accidentally inflicted and that certain old bruises on the boy's chest were the result of his "tickling" the boy. He said that the mother knew that he, not the school employee, had beaten the boy.

The mother was questioned later and she admitted that she had lied. She said that defendant had beaten both her and the boy and she showed bruises on her own body to prove this.

The prosecutor in his brief says that the only issue at trial was whether the wooden rung, as used, was a dangerous weapon under Minn.Stat. § 609.02, subd. 6 (1982). He argues that the state's theory of the case was that "what made this instrumentality a dangerous weapon was the manner in which it was used on the six-year-old victim." He argues that it was the victim's vulnerability that enabled the state to prove the rung was a dangerous weapon, as used. He argues, "In other words, if the victim had not been a six-year-old child, appellant would not have been convicted of the assault with a dangerous weapon."

The trial court expressed its reasons for departure both on the record at the time of imposition of sentence and in a subsequently written departure report. At the time of sentencing, the court stated:

I find it impossible to not conclude that there were aggravating circumstances here * * *. We had a helpless child who, in addition to being helpless, had placed unusual trust in this defendant, calling him father, obviously a child starved for love and fatherly guidance, who is even willing to lie to save the defendant, and to involve an innocent party. The defendant was the precipitating force behind that unholy act * * *.

The fact that the little boy was able to testify, tell it the way it was, probably resulted in the conviction of the defendant. And as Mr. Rathke aptly argued, was due to no fault of this defendant. You could have broken that child's back. You could have caused bleeding that would have killed him, and you were lucky that you didn't. I can't think of a more disreputable, socially unacceptable act in my life than to beat that poor child, who placed that confidence in you.

And my one desire, Mr. Elkins, is to separate you from Crow Wing County and society at large as long as I can.

In its departure report, the court stated:

Mr. Elkins was convicted by a jury of assault in the second degree involving a 6-year-old child. While the child was not permanently injured, there was unusual cruelty involved, in my opinion, and, of course, the victim was a child of tender years, and especially vulnerable, only 6 years of age. What really made me depart and give a consecutive sentence, that is, consecutive to prior convictions where probation was likely to be revoked, was that the child was starved for a father image, and when the defendant left jail about 2 weeks before the crime, he moved in with the child's mother, and the child immediately began to call him dad. The investigation of the crime disclosed that the child, even after being assaulted by the defendant, wanted to protect the defendant as his "dad."

The assault was vicious and totally uncalled for, and could have resulted in the death or permanent injury to the child.

We do not understand the state's argument that if the victim had not been a 6-year-old child the defendant would not have been convicted of assault with a dangerous weapon. Presumably an adult also could have received similar injuries if beaten with the rung and in such a situation the rung could be deemed a dangerous weapon.

In any event, we are satisfied that defendant committed the offense in a particularly serious manner. Defendant was in a position of authority over the victim, who was a defenseless child of only 6 years, and defendant did not just strike the victim once but apparently struck him numerous times, causing serious bruises that required hospitalization. Defendant did not simply deny the offense but also participated in the reprehensible scheme of trying to pin the blame on a completely innocent man, who was questioned by the police and otherwise seriously inconvenienced. This offense-related conduct is somewhat analogous to concealment of the body of a murder victim, conduct held to constitute an aggravating circumstance in *State v. Ming Sen Shiue*, 326 N.W.2d 648, 655 (Minn. 1982). The concealment of the victim's body in *Ming Sen Shiue* caused the family 5 months of trauma, during which they did not know for sure whether the victim was dead or alive. In this case the defendant's false accusations certainly and justifiably caused acute discomfort and embarrassment for the falsely-accused person.

 In summary, the trial court correctly concluded that aggravating circumstances were present justifying either a durational departure or one with respect to consecutive service. Having so concluded and having decided to depart, the court was faced with the choice of either departing durationally or with respect to consecutive service. In this case the maximum presumptive sentence duration, 58 months, was only 2 months short of the statutory maximum sentence duration of 60 months for violating section 609.222. Thus, the maximum durational departure in this case would be 2 months. Using consecutive sentencing and computing the sentence duration using the zero criminal history column made no sense because that would have added only 21 months to defendant's longest prior sentence of 21 months, making a total sentence of 42 months in prison, less than is obtained by using a 58-month concurrent sentence. The trial court tried to avoid this dilemma by computing defendant's presumptive sentence for purposes of consecutive sentencing in the same manner as if he were sentencing defendant concurrently. Using this approach, he sentenced

defendant to the maximum presumptive sentence that could have been imposed without departing if concurrent sentencing were used but made the sentence run consecutively.

An argument can be made that when aggravating circumstances are present the only limitations on the trial court should be those imposed by *State v. Evans*, 311 N.W.2d 481, 483 (Minn.1981), and by the statutory maximum sentence duration. We held in *State v. Kirsch*, 338 N.W.2d 45 (Minn.1983), that a trial court may not get around the *Evans* limitation by departing with respect to consecutive service if the departure gives the defendant a sentence that in effect is greater than a double durational departure would give the defendant. 338 N.W.2d at 46. One could argue that the converse of that should be that if aggravating circumstances are present, the court should be able to depart as to consecutive service without using the zero criminal history column so long as the result is not to give the defendant a prison term more than would be obtained by doubling the presumptive sentence duration. Otherwise, a defendant such as the defendant in this case who has a high criminal history score in effect cannot be given extra punishment for certain offenses even if he commits them in a particularly cruel way because the presumptive sentence duration is close to (or equivalent to or more than) the statutory maximum.

■ As we interpret the Guidelines, however, any time consecutive sentencing is used the presumptive sentence must be computed using the zero criminal history column. Since the trial court obviously wanted to impose the maximum sentence that could be imposed under the Guidelines, we modify the sentence, changing it from a 58-month consecutive sentence to a 60-month concurrent sentence.

Affirmed as modified.