OPINION
DIETZEN, Justice.
This case presents the question, of whether the district court may use the defendant’s concealment of the victim’s body as an aggravating factor to justify an upward durational departure from the presumptive sentence for a homicide offense. *155 Appellant Mo Savoy Hicks was convicted of second-degree unintentional murder for the death of Judy Rush. After Hicks waived his right to a sentencing jury, the district court imposed a 420-month sentence, which is an upward durational departure of 168 months. The court concluded that disposal and concealment of the victim’s body constituted particular cruelty. The court of appeals affirmed Hicks’s sentence. Because concealment of a murder victim’s body is an aggravating factor on which a district court may base an upward departure, we affirm the court of appeals.
On August 22, 2007, Judy Rush’s sister reported that Rush was missing. Police went to Rush’s apartment to check on her. They entered the apartment and found blood stains in the living room, hallway, and bedroom. The next day, the police executed a search warrant at the apartment. The officers saw what appeared to be blood on the rug, floor, mattress, and bedroom walls. On August 28, 2007, the Anoka County Medical Examiner determined that Rush could not have survived after she lost the volume of blood discovered in her apartment. In late July 2008, the court declared Rush legally dead.
At the time of Rush’s disappearance, Rush and Hicks were friends. The police spoke to Hicks about Rush on several occasions. He gave conflicting stories about being with Rush on the day police believed she was murdered.
Nearly 3 years after Rush’s disappearance, human remains were discovered buried in a shallow grave in a park in Brooklyn Park. DNA analysis identified the remains as Rush. After examining her skeletal remains, a medical examiner determined that Rush had died as the result of a blunt force cranial injury.
Respondent State of Minnesota charged Hicks with second-degree intentional murder, MinmStat. § 609. 19, subd. 1(1) (2014), and second-degree unintentional murder, MinmStat. § 609. 19, subd. 2(1) (2014). Hicks waived his right to a jury trial. He also waived his right to counsel and represented himself at trial.
During the court trial,. the State presented physical evidence connecting Hicks to Rush’s murder. In addition, two people with whom Hicks had been incarcerated at the Anoka County Jail testified that Hicks told them that he had hit Rush on the head with a “steel” or a hammer and then buried her near a place where Hicks used to live. The district court found Hicks guilty of second-degree unintentional murder but acquitted him of second-degree intentional murder.
Prior to trial, the State gave written notice that it intended to seek an upward durational sentencing departure. Its stated reasons for the departure included that the victim was treated with particular cruelty and that the victim’s body was concealed. At the sentencing hearing, the State indicated that these two reasons for a departure “dovetail together” and “really go kind of hand and foot” because some appellate decisions mention concealment of a body as an aggravating factor while others “have stated that concealment is a form of particular cruelty.” After consulting with standby counsel about his right to a sentencing jury, Hicks signed a written waiver of his right to a sentencing jury and orally waived that right at the sentencing hearing.
Rush’s daughter testified at the sentencing hearing. She described the lengthy search for her mother and the grief her family experienced. She testified that it was especially difficult not having her mother’s body because she felt no closure, often holding on to hope that her mother might be alive. She explained *156 that she went to several parks with a shovel and dug in places where the ground had recently been disturbed in the hope of finding her mother’s remains, and inadvertently disturbed the remains of pets that people had buried, which troubled her.
Rush’s daughter testified that the family held two funerals for Rush — one after she was declared legally dead and a second after her remains were located. The second funeral was delayed by many months because the medical examiner needed the help of a forensic anthropologist to determine the cause of Rush’s death due to the decomposed state of the body. This delay caused the daughter additional grief and trauma; she was forced to wait to be with and say goodbye to her mother while her mother’s remains were in multiple locations being studied by different people who were trying to determine how she died.
The district court found, in part, that the State proved “beyond a reasonable doubt that the disposal and concealment of Judy Rush’s body constitutes particular cruelty under the facts.” The court granted the State’s request for an upward durational departure. It sentenced Hicks to 420 months in prison, which was an upward durational departure of 168 months. See Minn. Sent. Guidelines IV (2007) (listing 252 months as the longest presumptive sentence for second-degree unintentional murder for a defendant with a criminal history score of four).
Hicks appealed both his conviction and sentence. The court of appeals affirmed. State v. Hicks, 887 N.W.2d 51, 55 (Minn. App.2013). With respect to his sentence, the court concluded that “[o]ne compelling circumstance that can support an upward durational departure is when a defendant treats a victim with particular cruelty” and that “[a] defendant’s concealment of the victim’s body is considered particularly cruel.” Id. at 62-63. It further reasoned that the fact that Hicks’s concealment of Rush’s body could constitute a separate, uncharged offense did not preclude the use of that fact to justify an upward durational, departure. Id. at 64. We granted review on the issue of Hicks’s aggravated sentencing departure.
I.
Hicks argues that the district court abused its discretion in imposing a 420-month executed sentence, which is an up-, ward durational departure of 168 months. Specifically, Hicks contends that concealing a murder victim’s body is not an aggravating factor upon which a district court may base an upward departure. According to Hicks, concealing a murder victim’s body amounts to a separate uncharged offense that is not a valid basis for a sentencing departure.
We review a district court’s decision to depart from the presumptive guidelines sentence for an abuse of discretion. Tucker v. State, 799 N.W.2d 583, 585-86 (Minn.2011). “If the reasons given for an upward departure are legally permissible and factually supported in the record, the departure will be affirmed. But if the district court’s reasons for departure are ‘improper or inadequate,’ the departure will be reversed.” State v. Edwards, 774 N.W.2d 596, 601 (Minn.2009) (quoting State v. Jackson, 749 N.W.2d 353, 357 (Minn.2008)).
The Minnesota Sentencing Guidelines promote uniformity, proportionality, and predictability in sentencing. State v. Misquadace, 644 N.W.2d 65, 68 (Minn.2002). The guidelines permit departures from the presumptive sentence, but a court departing from the guidelines must articulate “substantial and compelling” circumstances justifying the departure. See Jackson, 749 N.W.2d at 360; Minn. Sent. *157 Guidelines 2.D.I. “ ‘Substantial and compelling circumstances are those demonstrating that the defendant’s conduct in the offense of conviction was significantly more or less serious than that typically involved in the commission of the crime in question.’” Tucker, 799 N.W.2d at 586 (emphasis omitted) (quoting State v. Jones, 745 N.W.2d 845, 848 (Minn.2008)). The guidelines contain a “nonexclusive list of factors that may be used as reasons for departure.” Minn. Sent. Guidelines 2.D.8. One of the aggravating factors listed in the guidelines is that “[t]he victim was treated with particular cruelty for which the individual offender should be held responsible.” Minn. Sent. Guidelines 2.D.3.b.(2). We have occasionally recognized new aggravating factors that are not included in the list of aggravating factors in the guidelines. See, e.g., State v. Morales, 324 N.W.2d 374, 377 (Minn.1982) (upholding upward durational sentencing departure when the defendant “invaded the zone of privacy which surrounded [the victim’s] home”); State v. Profit, 323 N.W.2d 34, 36 (Minn.1982) (upholding upward durational sentencing departure because the offense was committed at a daycare in front of children).[1]
A.
To answer the question presented, we will first review our existing case law to determine whether concealment of a homicide victim’s body is a legally permissible basis for departure under the sentencing guidelines. Generally, the district court may impose an upward durational sentencing departure if the evidence shows that the defendant committed the offense in a particularly serious way. Tucker, 799 N.W.2d at 586. But the court may not do so “if the sentence will unfairly exaggerate the criminality of the defendant’s conduct, or punish a defendant twice for the same conduct.” Edwards, 774 N.W.2d at 601.
We have considered whether the concealment of a body is an aggravating factor that supports an upward sentencing departure in four cases. State v. Griller, 583 N.W.2d 736, 738-39, 744 (Minn.1998); State v. Folkers, 581 N.W.2d 321, 323, 327 (Minn.1998); State v. Schmit, 329 N.W.2d 56, 58 (Minn.1983); State v. Ming Sen Shiue, 326 N.W.2d 648, 654-55 (Minn.1982). In Shiue, the district court imposed a greater-than-double upward dura-tional sentencing departure for a second-degree murder conviction when the defendant abducted a six-year-old boy, put him in the trunk of his car and drove around for an hour, and then killed him with a crowbar in a deserted area. 326 N.W.2d at 649-50. The defendant left the body hidden in dense brush in this remote location. Id. Several months after the boy was reported missing, the defendant agreed to tell law enforcement where the body was located in exchange for not being charged with first-degree murder. Id. at 650.
In affirming the upward durational departure, we stated that “the concealment [of the body] was an aggravating factor to be considered.” Id. at 655. We reasoned that “[f]or five months, [the victim]’s family suffered a great deal of trauma, not knowing whether their son was dead or alive.” Id. “The inclusion of concealment as an aggravating factor [was] justified not only by the trauma to close relatives, but by independent policy reasons” of preventing defendants from using the unknown *158 location of a murder victim’s body as a negotiating chip to receive a reduced charge. Id.
One month after Shiue, we decided State v. Schmit, 329 N.W.2d 56 (Minn. 1983). In Schmit, we affirmed an upward durational sentencing departure in a first-degree heat-of-passion manslaughter case but reduced it to a double durational departure. Id. at 56. The defendant killed his wife, and the next day he took her body and left it near some railroad tracks, where it was discovered about 2 months later. Id. The district court relied, in part, on “the manner in which defendant disposed of the victim’s body” in justifying the sentencing departure. Id. at 58 n. 1. We stated that “[bjecause defendant made no effort to bargain with information concerning the location of the body, his concealment of the body does not operate as an aggravating factor in sentencing.” Id.
Arguably, Schmit could be read to limit concealment of a body as an aggravating factor to those circumstances in which the defendant attempts to bargain with information concerning the location of the body. But we rejected such a limitation in two subsequent cases. State v. Griller, 583 N.W.2d 736 (Minn.1998); State v. Folkers, 581 N.W.2d 321 (Minn.1998). In Folkers, the defendant shot his girlfriend; the next day he put her body in her van and abandoned the van in a parking lot. 581 N.W.2d at 323. We affirmed an upward durational sentencing departure, concluding, among other things, that Folkers “treated the victim with particular cruelty in that he attempted to conceal her body.” Id. at 327. We reasoned that “[a] finding that the victim was treated with particular cruelty alone would be enough to justify the departure.” Id. And in Griller, we affirmed an upward durational sentencing departure for second-degree murder that the district court based, in part, on concealment of the body when the defendant dismembered the victim and buried the body parts in his back yard. 583 N.W.2d at 738-39, 744.
Our decisions in Folkers and Griller introduced confusion into the law. We did not mention Schmit in either of these cases. See Griller, 583 N.W.2d at 744; Folkers, 581 N.W.2d at 327. Because Folkers and Griller did not mention Schmit, it was unclear as to what circumstances, if any, would limit the use of concealment of the victim’s body as an aggravating factor.
We granted review in State v. Leja to clarify when concealment of a body could be an aggravating factor. 684 N.W.2d 442 (Minn.2004). In Leja, the defendant was convicted of aiding and abetting second-degree unintentional murder. Id. at 443. (Anderson, Paul, J., plurality opinion). The defendant’s accomplices killed the victim and dismembered his body, and the defendant helped to hide the victim’s body parts in Wisconsin. Id. at 444-46 (Anderson, Paul, J., plurality opinion).
Unfortunately, we were unable to clarify the law. Although we reversed the upward departure, only three members of the court concluded that concealment of the victim’s body, without additional facts such as the use of the location of the body as a bargaining chip, does not justify an upward durational sentencing departure. See id. at 449-50 (Anderson, Paul, J., plurality opinion). One member of the court concurred in the result, but on different grounds than the plurality opinion — specifically, that the district court could not base an upward departure on concealment of the body because it constituted the separate offense of accomplice after the fact. Id. at 451-52 (Anderson, Russell, J., concurring specially). Three members of the court dissented and concluded that concealment of the victim’s body alone is a *159 sufficient basis for an upward durational departure and that the district court did not abuse its discretion in imposing the departure. Id. at 456-57 (Blatz, C.J., dissenting, joined by Gilbert, Meyer, JJ.).[2]
Today, we answer the question left open by Leja. We conclude that the concealment of a homicide victim’s body, in and of itself, may be an aggravating factor under the sentencing guidelines that supports an upward durational sentencing departure.[3] The offender’s conduct in concealing the victim’s body is more serious than the typical second-degree unintentional murder because family and friends of a victim suffer additional trauma by not knowing whether their relative or friend is dead or alive, and concealment is contrary to the proper, respectful treatment due to the remains of a deceased person.[4] Shiue, 326 N.W.2d at 655.
Previously, we have relied on the harm caused to people other than the victim when recognizing aggravating factors that are not specifically listed in the guidelines.[5] See Edwards, 774 N.W.2d at 607 (holding that the district court did not abuse its discretion in concluding first-degree assault was committed in a particularly serious way because the defendant put at risk a large number of people who were near the victim when the defendant shot him); State v. Mitjans, 408 N.W.2d 824, 884 (Minn.1987) (upholding upward durational sentencing departure in second-degree unintentional murder case because shots fired in a bar put others at risk); State v. Elkins, 346 N.W.2d 116, 119 (Minn.1984) (affirming an upward durational sentencing departure because, among other reasons, the defendant pinned the blame for the crime on someone else); Shiue, 326 N.W.2d at 655 (recognizing that concealment of a body is an aggravating factor *160 because of trauma caused to the victim’s family); State v. Profit, 328 N.W.2d 34, 36 (Minn.1982) (upholding an upward dura-tional sentencing departure for criminal sexual conduct that was committed at a daycare in front of children because “while the children maybe were not technically .victims of the crime, they were victims in another sense”). Consequently, the concealment of a homicide victim’s body, in and of itself, may be an aggravating factor that supports an upward durational departure.
B.
The dissent claims that Hicks’s concealment of the body was an “afterthought” to the murder and was not “part of a prearranged scheme.” But we have long recognized that a defendant’s conduct in concealing a crime is part of the same behavioral incident as the underlying offense. See State v. Gibson, 478 N.W.2d 496, 497 (Minn.1991) (explaining that when a defendant commits a substantially contemporaneous second offense in order to avoid apprehension for the first offense, both offenses are part of the same behavioral incident). As a result, a defendant’s conduct in concealing a victim’s body is generally part of the defendant’s conduct of committing a homicide. It is conduct that is more serious than that typically involved in a homicide. Consequently, the dissent’s claim that our decision “undermines the important sentencing principles of proportionality, uniformity, predictability, and rationality” is without merit.
Moreover, our case law does not require concealment of a victim’s body to be part of a prearranged scheme for it to be part of the same behavioral incident, as the dissent claims.[6] See State v. Kendell, 723 N.W.2d 597, 602-04, 608 (Minn.2006) (holding the district court correctly determined that shootings were part of a single behavioral incident under the avoidance-of-apprehension doctrine when the defendant shot at his girlfriend and children in their apartment and upon leaving the girlfriend’s apartment, shot and killed an unrelated male in the doorway of the next apartment); State v. Wipper, 512 N.W.2d 92, 93-95 (Minn.1994) (holding that murder and arson were committed as part of the same • behavioral incident under the avoidance-of-apprehension doctrine when the defendant shot the victim and then, along with his co-defendant, decided to burn down the victim’s house in an attempt to cover up the killing); State v. Hawkins, 511 N.W.2d 9, 11, 13-14 (Minn.1994) (holding that aggravated robbery and attempted murder were part of the same behavioral incident under the avoidance-of-apprehension doctrine when the defendant beat the victim and tried to take his money, and when the victim said he was a cop and the defendant saw the victim had a gun, the defendant said “ ‘[w]e’ve got to do him’ ”). Thus, the dissent’s claim that Hicks’s concealment of *161 Rush’s body necessarily constitutes a sepa-, rate offense is without merit.
When viewed.in their totality, the facts of this case establish that Hicks’s concealment of Rush’s body was substantially contemporaneous to her murder. The evidence presented at trial shows that Hicks and Rush argued in her apartment, and Rush threatened to call the police. Hicks told Rush he “wasn’t going to let another bitch send him back to prison.” During the course of this argument, Hicks went into the bedroom, hit Rush on the head with a hammer, and killed her. Hicks then went into the living room and began devising a plan to get rid of Rush’s body. Hicks eventually decided to dump Rush’s body in Brooklyn Park in the middle of the night. He left the apartment only to retrieve a large hockey bag from the trunk of his car. Later that night, he placed Rush’s body into that bag, put the bag in the trunk of his car, drove to Brooklyn Park, and then buried Rush’s body in a shallow grave in a park. Although “some hours” passed between the murder and Hicks’s removal of Rush’s body from the apartment, the concealment of Rush’s body may still be considered part of the same conduct as the murder. See Bixby v. State, 844 N.W.2d 390, 393 (Minn.1984) (holding that two separate acts of criminal sexual conduct involving the same victim committed in two locations over the course of one evening were part of the same behavioral incident); State v. Herberg, 324 N.W.2d 346, 349 (Minn.1982) (same); see also State v. Musta, 284 Minn. 359, 364, 170 N.W.2d 341, 345 (1969) (explaining that if the defendant had been charged with only robbery, “evidence of his efforts to escape apprehension including the exchange of gunfire [with police] which constituted the assault” and which occurred several hours after the robbery, “would have been admissible as evidence of participation in the robbery”).
C.
Hicks and the dissent also argue that concealment of a murder victim’s body cannot be an aggravating factor because it constitutes the uncharged offense of interfering with a dead body. See Minn.Stat. § 609.502, subd. 1 (2014) (“Whoever interferes with the body or scene of death with intent to mislead the coroner or conceal evidence is guilty of a gross misdemeanor.”) Relying on State v. Jackson, 749 N.W.2d 353 (Minn.2008), Hicks contends that an upward durational sentencing departure cannot be based on a separate, uncharged offense. This argument lacks merit.
In Jackson, the defendant and an accomplice broke into the victim’s home, the defendant assaulted the victim with a gun, and the two stole his property. 749 N.W.2d at 356. We reversed an upward durational sentencing departure the district court imposed for first-degree aggravated robbery while armed with a dangerous weapon based, in part, on the homeowner’s injuries, which amounted to a third-degree assault. Id. at 357. We concluded the departure was improper because “[a] departure cannot be based on uncharged criminal conduct,” and if third-degree assault had been charged, Minn.Stat. § 609.035 (2014), would have precluded sentencing on that offense. Jackson, 749 N.W.2d at 357-58. We were also concerned with the possibility that the sentencing guidelines could be manipulated by bringing lesser charges than the facts permitted in order to obtain a longer sentence by withholding, some facts related to greater charges to use as an aggravating factor at sentenc *162 ing.[7] Id. at 357-58; see also State v. Edwards, 774 N.W.2d 596, 606 (Minn.2009) (interpreting Jackson as expressing concern that the prosecution was “manipulating” the sentencing guidelines by undercharging Jackson).
Jackson is distinguishable. Unlike Jackson, there is no concern in this case of sentencing manipulation by the State. 749 N.W.2d at 357-58. The State did not undercharge Hicks when it charged him with two counts of second-degree murder.
More importantly, in Edwards, 774 N.W.2d at 601-02, 606, we clarified our discussion in Jackson regarding what facts may be used to support an upward dura-tional sentencing departure when the facts relate to the offense of conviction and another offense. Specifically, in Edwards we rejected the defendant’s argument that our case law “expressly bar[s] the district court from considering facts to depart simply because those facts related to another offense that arose out of the same behavioral incident.” 774 N.W.2d at 604. Instead, we explained that “[u]nder our sentencing jurisprudence, it is permissible for the district court to impose an upward sentencing departure” if the facts “ ‘available’ for departure” establish “that the defendant committed the offense in question in a particularly serious way.” Id. at 601-02. We held that facts from a single behavioral incident that relate to multiple offenses may be relied on to support a durational departure “if those facts show that the defendant committed the offense being sentenced in a particularly serious way.” Id. at 604. In Edwards, we found Jackson distinguishable on several grounds, including that “there [was] no evidence of sentence ‘manipulation’ by the State.” Edwards, 774 N.W.2d at 606.
Consequently, the facts of concealing a homicide victim’s body are available for departure in appropriate cases. See Edwards, 774 N.W.2d at 601. In a second-degree unintentional murder case, the facts of concealment of a victim’s body may be part of a single behavioral incident that relate to both second-degree unintentional murder and interfering with a dead body. See State v. Gibson, 478 N.W.2d 496, 497 (Minn.1991). For the reasons we previously articulated, these facts may show that the defendant committed second-degree unintentional murder in a particularly serious way. As a result, a district court may base an upward durational departure on the defendant’s concealment of a victim’s body when sentencing a defendant for second-degree unintentional murder.
We recognize that the concealment of a victim’s body may not always demonstrate that the offense was committed in a particularly serious way. For example, if the body were concealed for a day, then it may not have been committed in a particular serious way. In each case, the district court will need to determine if the particular facts of concealment as found by a sentencing jury or admitted by the defendant demonstrate that the offense was committed in a particularly serious way.
*163 II.
Having determined that concealment of a homicide victim’s body may be a reason for a district court to impose an upward durational sentencing departure, we now consider whether the district court abused its discretion in imposing an upward durational sentencing departure based on the facts of this case. “If the reasons given for an upward departure are legally permissible and factually supported in the record, the departure will be affirmed.” State v. Edwards, 774 N.W.2d 596, 601 (Minn.2009).
The district court’s stated reason for the durational departure was its conclusion that the disposal and concealment of Rush’s body was particularly cruel under the facts of this case. Despite the district court’s use of the phrase “particular cruelty,” it is clear that the district court’s reason for imposing an upward durational departure was Hicks’s concealment of Rush’s body. The State argued to the district court that concealment of a body and particular cruelty were essentially the same because appellate decisions had used different language to refer to the same aggravating factor. And the district court stated that Hicks’s concealment of Rush’s body is what made the offense more serious than the typical second-degree unintentional murder.
We conclude that concealment of a homicide victim’s body is a legally permissible reason for a departure and is factually supported by the record in this case. The evidence shows Hicks concealed Rush’s body by burying it in a shallow grave in a park. There was extensive testimony from Rush’s daughter regarding the trauma and anguish Rush’s family experienced because her body was concealed for nearly 3 years. As a result, we hold the district court did not abuse its discretion when it imposed an upward durational departure on Hicks’s sentence for second-degree unintentional murder.
Affirmed.

. At the time Morales and Profit were decided, the guidelines did not include committing an offense in the presence of a child or in the victim's zone of privacy as aggravating factors. See Minn. Sent. Guidelines II.D.2.b. (1981). After Morales and Profit were decided, the guidelines were updated to list the two circumstances as aggravating factors. See Minn. Sent. Guidelines 2.D.3.b.(13)-(14).

. The dissent argues our law is clearly settled that concealment of a body is not an aggravating factor unless the defendant attempts to use concealment as a bargaining chip. We disagree. Our plurality opinion in Leja reflects the lack of clarity on this question. The dissent alleges that in Leja "four members of the court rejected the State’s argument that concealment of the body should, by itself, be an aggravating factor sufficient to justify an upward durational departure.” Only the three members of the court who joined the plurality rejected this argument. See Leja, 684 N.W.2d at 449-50 (Anderson, Paul, J., plurality opinion). In his concurrence, Justice Russell Anderson did not join the plurality's conclusion on this issue; indeed, he expressed no view on the question of whether concealment of a body could be an aggravating factor only if the defendant tried to use that concealment as a bargaining chip. See id. at 450-53 (Anderson, Russell, J., concurring specially). Instead, Justice Russell Anderson's concurrence based its analysis primarily on the fact that the concealment was a separate incident from the underlying crime of unintentional felony murder.

. To the extent that State v. Schmit, 329 N.W.2d 56, 58 n. 1 (Minn.1983), is inconsistent with this decision, that portion of Schmit is no longer good law.

. By concealing the victim's body, we mean disposing of the victim's body in a manner that impedes its discovery.

. The dissent claims these cases are distinguishable because the other people who were harmed by the defendant’s conduct "were present at the scene when the crime was committed.” This distinction does not apply to State v. Elkins, 346 N.W.2d 116, 119 (Minn.1984), and Shiue, 326 N.W.2d at 655. The dissent is correct that in some of the cases cited above, the other people who were harmed by the defendant’s conduct were physically present when the offense was committed. See Edwards, 774 N.W.2d at 600; State v. Mitjans, 408 N.W.2d 824, 834 (Minn.1987); Profit, 323 N.W.2d at 36. But the dissent cites no language from these decisions indicating that the imposition of an upward durational departure is expressly limited to factual situations in which the other people harmed are present when the offense is committed.

. The dissent relies on State v. Bookwalter, 541 N.W.2d 290 (Minn.1995), to argue that the avoidance-of-apprehension doctrine requires that the second offense must be “part of a prearranged scheme” and cannot be an "afterthought” to the initial offense. In Book-waiter, we never used the phrases "prearranged scheme” or "afterthought” in our. analysis under the avoidance-of-apprehension doctrine, id. at 296-97. We did use these phrases in an earlier part of our opinion addressing another topic. Id. at 295-96. But contrary to the dissent’s claim, we did not "incorporatef ] that discussion into our analysis of Bookwalter’s avoidance-of-apprehension claim.” See id. at 297 (relying on two specific "factors” — "the multiplicity and disjointed nature of events between the sexual assault and the attempted murder” — in concluding that the defendant did not attempt to murder the victim in order to avoid apprehension for sexually assaulting her).

. Following our decision in Jackson, the Legislature amended Minn.Stat. § 244.10 to add a provision stating, "[n]otwithstanding section 609.04 or 609.035, or other law to the contrary, when a court sentences an offender for a felony conviction, the court may order an aggravated sentence beyond the range specified in the sentencing guidelines grid based on any aggravating factor arising from the same course of conduct.” Act of May 11, 2009, ch. 59, art. 5, § 8, 2009 Minn. Laws 346, 367 (codified at Minn.Stat. § 244.10, subd. 5a(b) (2014)). Thus, the Legislature has apparently limited the impact of Jaclcson. This language, however, does not apply to this case. See id., 2009 Minn. Laws at 367 (stating that the amendment applies to crimes committed on or after August 1, 2009).