*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2014).*

## STATE OF MINNESOTA
## IN COURT OF APPEALS
## A15-0529

State of Minnesota,
Appellant,

vs.

Alonzo Crowder,
Respondent

**Filed August 31, 2015**
**Affirmed in part, reversed in part, and remanded**
**Chutich, Judge**

Dakota County District Court
File No. 19HA-CR-14-2853

Lori Swanson, Attorney General, St. Paul, Minnesota; and

James C. Backstrom, Dakota County Attorney, Heather Pipenhagen, Assistant County Attorney, Hastings, Minnesota (for appellant)

Cathryn Middlebrook, Chief Appellate Public Defender, Erik I. Withall, Assistant State Public Defender, St. Paul, Minnesota (for respondent)

Considered and decided by Larkin, Presiding Judge; Chutich, Judge; and Smith, Judge.

## U N P U B L I S H E D   O P I N I O N

**CHUTICH**, Judge

The state appeals the district court's downward durational departure for respondent Alonzo Crowder, who pleaded guilty to felony-level identify theft. In a

related appeal, Crowder argues that the identity theft statute, which imposes a statutory minimum restitution payment of $1,000 for every direct victim, is unconstitutional. Because the district court's stated reasons for a durational departure are improper and the record is insufficient to justify one, the district court abused its discretion in granting the downward durational departure. Because Crowder did not properly raise his constitutional argument in district court, we do not reach its merits. Accordingly, we affirm the restitution ordered but reverse the durational departure and remand for resentencing.

**FACTS**

Respondent Alonzo Crowder worked at an assisted-living residence as an overnight aid, security aid, and janitor. Crowder's position gave him access to residents' personal information, and he obtained a resident's credit card and used it to buy jewelry. While police were investigating the unauthorized jewelry purchase, they searched Crowder's apartment and discovered personal information for 15 people, all of whom were current or prior residents of the assisted-living residence where Crowder worked. Crowder admitted using the personal information of at least five residents to open an account at Kohl's and to purchase items he later sold to pay bills and to buy drugs.

The state charged Crowder with one count of felony identity theft involving eight or more victims and one count of felony attempted financial transaction card fraud. *See* Minn. Stat. §§ 609.527, subds. 2, 3(5) (offense committed against more than eight victims), 609.821, subd. 2(1) (using card without consent) (2014). Crowder pleaded guilty to the charge of felony identity theft, and the other charge was dismissed.

2

Crowder's offense was a severity level eight under the sentencing guidelines. Minn. Sent. Guidelines 5.A (2014). With his criminal history score of zero, the presumptive range for his offense was 41 to 57 months, and the presumptive sentence was 48 months. Minn. Sent. Guidelines 4.A (2014). The presentence investigation report recommended that Crowder receive a 48-month sentence, pay restitution, and have no contact with the victims or their families.

Crowder requested a dispositional departure. The district court granted a durational departure, sentencing Crowder to a gross misdemeanor with 365 days in jail, credit for 132 days served, and the remaining 233 days stayed. The district court also required him to undergo a mental-health evaluation and to pay each victim $1,000 in restitution. *See* Minn. Stat. § 609.527, subd. 4(b) (2014) (stating that the district court shall order a person convicted of identity theft to pay restitution of not less than $1,000 to each direct victim of the offense).

At the sentencing hearing, the district court stated the following reasons to justify the departure: (1) Crowder would not be able to pay restitution if he were incarcerated, (2) he had suffered a stroke and head injury, (3) he expressed remorse, and (4) he accepted responsibility. The district court also noted that Crowder would not be going to prison had the number of victims not been aggregated into one count or had he been charged with a general theft crime instead of identity theft.

On the written departure report, the district court checked the following boxes for offender-related mitigating factors: amenable to probation, amenable to treatment, impose restitution/ensure financial penalties paid, and shows remorse/accepts

responsibility. The district court did not check any boxes relating to a durational departure.

The state appealed Crowder's downward durational departure. Crowder then filed a notice of related appeal, challenging the constitutionality of his court-ordered restitution payments. We questioned whether we had jurisdiction to hear the related appeal, but, after briefing by the parties, we construed Crowder's related appeal as a notice of appeal from the final judgment and accepted jurisdiction.

## D E C I S I O N

### I. Downward Durational Departure

"The Minnesota Sentencing Guidelines promote uniformity, proportionality, and predictability in sentencing." *State v. Hicks*, 864 N.W.2d 153, 156 (Minn. 2015). A guidelines sentence is presumed to be appropriate, and the district court "must" impose it unless there are "identifiable, substantial, and compelling circumstances" that support a different sentence. Minn. Sent. Guidelines 2.D.1 (2014); *see also State v. Soto*, 855 N.W.2d 303, 308 (Minn. 2014) ("[A] sentencing court can exercise its discretion to depart from the guidelines only if aggravating or mitigating circumstances are present." (quotation omitted)). Substantial and compelling circumstances exist if the defendant's conduct is significantly more or less serious than the conduct typically involved in the commission of the crime in question. *See Hicks*, 864 N.W.2d at 157.

We review a district court's decision to depart from the presumptive guidelines sentence for an abuse of discretion. *Id.* at 156. If the district court's reasons for the departure are legally permissible and supported by the record, the departure will be

4

affirmed. *Id.* If the district court's reasons are improper or inadequate, the departure will be reversed. *Id.*

The state challenges the district court's decision to grant a downward durational departure. "Requests for durational departures require the district court to consider whether the conduct involved in the offense of conviction was significantly more or less serious than the typical conduct for that crime." *State v. Peter*, 825 N.W.2d 126, 130 (Minn. App. 2012), *review denied* (Minn. Feb. 27, 2013). "[O]ffender-related factors do not support durational departures." *Id.*

In *Williams v. State*, the supreme court prospectively established the following framework for reviewing sentencing departures:

> 1. If no reasons for departure are stated on the record at the time of sentencing, no departure will be allowed.
> 2. If reasons supporting the departure are stated, this court will examine the record to determine if the reasons given justify the departure.
> 3. If the reasons given justify the departure, the departure will be allowed.
> 4. If the reasons given are improper or inadequate, but there is sufficient evidence in the record to justify departure, the departure will be affirmed.
> 5. If the reasons given are improper or inadequate and there is insufficient evidence of record to justify the departure, the departure will be reversed.

361 N.W.2d 840, 844 (Minn. 1985).[1]

---

[1] The supreme court has questioned the continuing validity of the *Williams* framework for *upward* durational departures. *See State v. Jones*, 745 N.W.2d 845, 851 (Minn. 2008) (stating that post-*Blakely*, absent a waiver by a defendant, the fact-finder must determine facts that would justify an upward departure). But this examination technique still applies to *downward* durational departures. *See State v. Nieznanski*, No. A14-2055, 2015 WL 2185319, at *2 n.3 (Minn. App. May 11, 2015) ("[T]here is nothing to suggest that

During the sentencing hearing, the district court stated several reasons to justify the departure. The state argues that these reasons cannot justify a durational departure, and we agree.

First, the district court noted that Crowder would not be able to pay restitution if he were incarcerated. The inability to pay restitution while incarcerated, however, is not a proper factor for a durational departure. *See State v. Vahabi*, 529 N.W.2d 359, 361 (Minn. App. 1995) ("The trial court's stated reason for [the durational] departure, to ensure payment of restitution, is inadequate."); *see also* Minn. Sent. Guidelines cmt. 2.D.201 (2014) ("[S]entencing should be neutral with respect to an offender's . . . income level.").

The district court also found that Crowder showed remorse. "As a general rule, a defendant's remorse bears only on a decision whether or not to depart dispositionally, not on a decision to depart durationally . . . ." *State v. Back*, 341 N.W.2d 273, 275 (Minn. 1983); *see also State v. Trog*, 323 N.W.2d 28, 31 (Minn. 1982). In *State v. Bauerly*, we affirmed the district court's use of remorse to *help* support a downward durational departure based on the seriousness of the offense. 520 N.W.2d 760, 762-63 (Minn. App. 1994), *review denied* (Minn. Oct. 27, 1994). But unlike *Bauerly*, the seriousness of the offense does not justify a downward durational departure here. Furthermore, remorse,

---

the framework adopted in [*Williams* and *Geller*] does not continue to apply when we review downward durational departures.").

6

standing alone, is an insufficient basis to justify a downward durational departure. *State v. Solberg*, ___ N.W. 2d ___, ___ (Minn. App. Aug. 25, 2015).

The district court also acknowledged that Crowder had suffered a stroke and head injury. Mental impairment can support a durational departure if it is *extreme*. *See* Minn. Sent. Guidelines 2.D.3.a(3) (2014) ("The offender, because of physical or mental impairment, lacked substantial capacity for judgment when the offense was committed."). While the district court recognized that Crowder suffered a stroke and traumatic head injury, it made no findings as to whether these past medical conditions caused Crowder to lack "substantial capacity for judgment" when Crowder took information from fifteen elderly people and used some of the information for his personal gain.

Moreover, compared to the rare cases in which a downward durational departure has been justified on the basis of mental impairment, the record does not show that Crowder's impairment rises to the same "extreme" level of severity. *See, e.g.*, *State v. McLaughlin*, 725 N.W.2d 703, 716 (Minn. 2007) ("[T]o constitute a mitigating factor in sentencing, a defendant's impairment must be 'extreme' to the point that it deprives the defendant of control over his actions."); *State v. Martinson*, 671 N.W.2d 887, 891-92 (Minn. App. 2003) (affirming a downward durational departure for a defendant who suffered from paranoid schizophrenia and concluding that his mental impairment was sufficiently extreme to be a substantial and compelling circumstance that justified the departure), *review denied* (Minn. Jan. 20, 2004).

Finally, the district court also noted that Crowder was amenable to probation and to treatment. But amenability to probation and treatment are factors that support a

*dispositional* departure. *State v. Herrmann*, 479 N.W.2d 724, 728 (Minn. App. 1992) ("The defendant's amenability to probation or treatment is a relevant factor in determining whether a dispositional departure is warranted, but does not appear to bear on the issue of the appropriate duration of a sanction."), *review denied* (Minn. Mar. 19, 1992).

Crowder counters that the downward durational departure was justified because—although not a reason cited by the district court—his crime was less onerous than the typical identity theft case contemplated under Minnesota Statutes section 609.527, subdivision 3(5). This section applies if (1) the offense involves eight or more direct victims; (2) the direct and indirect victims suffered a combined loss of more than $35,000; or (3) the offense is related to the possession or distribution of pornographic work involving minors. Minn. Stat. § 609.527, subd. 3(5). Crowder argues that his crime is less severe under this statute because he stole a relatively small amount compared to $35,000 and because his crime did not involve child pornography.

We recognize that Crowder's offense involved nowhere near $35,000 in damages or child pornography. But within this section of the identity theft statute, the legislature created a *separate* category for thefts involving eight or more identities. *See id.* When the "[l]egislature's intent is clear from the statute's plain and unambiguous language," as it is here, "we interpret the statute according to its plain meaning." *Meeker v. IDS Prop. Cas. Ins. Co.*, 862 N.W.2d 43, 46 (Minn. 2015).

Furthermore, the record here shows that Crowder possessed the personal identification information of at least fifteen people. The victim impact statements show

8

that these victims were particularly vulnerable because of advanced age, illness and reduced capacities, and that Crowder's actions caused many of them to feel frightened and betrayed. Given the number and nature of his vulnerable victims, Crowder's offense cannot be viewed as somehow less serious than the typical identity theft crime. Accordingly, this record does not show that a durational departure was justified because Crowder's crime was less onerous than the typical identity theft case.

In sum, because the offender-related reasons stated by the district court were improper to support a downward *durational* departure and because sufficient evidence in the record does not show that this offense was less onerous than the typical identity theft case, we reverse and remand for resentencing. Although the state opposed a dispositional departure at the sentencing hearing, we note that, upon appeal, it did not contend that a *dispositional* departure would be inappropriate under the circumstances present here.

## II.     Constitutionality of Mandatory Minimum Restitution Statute

We next turn to Crowder's appeal regarding the constitutionality of the mandatory minimum restitution statute. *See* Minn. Stat. § 609.527, subd. 4(b). To challenge restitution, an offender must request a hearing "within 30 days of receiving written notification of the amount of restitution requested, or within 30 days of sentencing, whichever is later." Minn. Stat. § 611A.045, subd. 3(b) (2014). The hearing request must also be "in writing and filed with the court administrator." *Id.* A defendant cannot challenge restitution after the 30-day period has passed. *Id.*

Crowder argues that the mandatory minimum restitution statute is unconstitutional because it forces a person convicted of identity theft to pay a mandatory minimum

9

restitution of $1,000 to every direct victim of the offense without regard to the victim's actual loss or the offender's ability to pay. The state contends that Crowder waived his right to challenge the restitution payments because he did not request a hearing within the requisite 30-day deadline. Caselaw shows, however, that this time bar does not apply to challenges to the district court's legal authority to order restitution.

Generally, a defendant cannot challenge the amount of restitution ordered if the defendant has not submitted a written request for a hearing within 30 days of receiving notification of the restitution requested or within 30 days of sentencing, whichever is later. *See id.* But in *State v. Gaiovnik*, the supreme court concluded that the 30-day deadline and written requirement in section 611A.045, subdivision 3(b) will not bar an appellant's claim when the appellant challenges the district court's *legal* authority to award restitution. 794 N.W.2d 643, 647 (Minn. 2011). Because Crowder challenged the constitutionality of the mandatory minimum restitution statute and because this challenge was to the court's legal authority as *Gaiovnik* allows, his claim is preserved.

Even though section 611A.045 does not bar Crowder's constitutional claim, we decline to consider the claim here because it was not properly raised in the district court. At the very end of the sentencing hearing, the following exchange took place between the district court and Crowder's attorney:

> [Defense Attorney]: And, Judge, it's our request that you order a restitution study so that we may respond to both the dollar determination and to the appropriateness or constitutionality of the arbitrary thousand dollar limit.
> THE COURT: 611A, you'll be given a notice, and I think you can tee it up right then. It's not an award until it comes back

10

> and this is the result and you're given notice in accordance
> with that particular Minnesota law.

Crowder's statement to the district court, at most, put the district court on notice of his intent to argue some aspect of the constitutionality of the restitution payments. But Crowder did not actually raise his specific constitutional challenge during any proceeding at the district court, and, as Crowder's counsel admitted on appeal, the claim was not litigated below or decided by the district court.

"We ordinarily do not consider issues raised for the first time on appeal, even when those issues are . . . challenges to the constitutionality of a statute." *State v. Williams*, 794 N.W.2d 867, 874 (Minn. 2011). We may, however, address even newly raised constitutional issues if justice so requires. *See* Minn. R. Civ. App. P. 103.04; *see also* Minn. R. Crim. P. 28.02, subd. 11 ("On appeal from a judgment, the court may review any order or ruling of the district court or any other matter, as the interests of justice may require."). We have applied this interests-of-justice exception to constitutional issues "when the parties have had adequate time to brief such issues, and when such issues are implied in the lower court." *Tischendorf v. Tischendorf*, 321 N.W.2d 405, 410 (Minn. 1982). Of course, issues of constitutionality are not to be taken lightly, and the challenger bears a "very heavy burden of demonstrating beyond a reasonable doubt that the statute is unconstitutional." *State v. Merrill*, 450 N.W.2d 318, 321 (Minn. 1990).

Applying these principles here, we decline to address Crowder's constitutional claim because the briefing is insufficient to address the key constitutional issue raised by

11

the mandatory minimum restitution statute: substantive due process. Crowder's brief focuses almost exclusively on procedural due process, arguing that section 609.527, subdivision 4(b), is unconstitutional and punitive because it forces a person convicted of identity theft to pay mandatory minimum restitution of $1,000 to every direct victim. But Crowder does not complain that this statute deprives him of notice or opportunity to be heard; instead, he contends that the statute itself is unfair because it levies an automatic fine after notice and a hearing. Thus, the constitutional issue that Crowder seeks to raise is a *substantive* due process issue. *See State v. Wiseman*, 816 N.W.2d 689, 692 (Minn. App. 2012) ("Procedural due process requires notice and an opportunity to be heard" whereas "substantive due process protects individuals from certain arbitrary, wrongful government actions regardless of the fairness of the procedures used to implement them." (quotations omitted)), *review denied* (Minn. Sept. 25, 2012), *and abrogated on other grounds by Missouri v. McNeely*, 133 S. Ct. 1552 (2013).

While Crowder's brief addresses substantive due process in passing, it is an incomplete analysis at best. Moreover, we have concerns about the fairness of considering the issue when the state's supplemental reply brief does not address substantive due process at all. *See State Dep't of Labor & Indus. v. Wintz Parcel Drivers, Inc.*, 558 N.W.2d 480, 480 (Minn. 1997) (declining to reach a constitutional issue in the absence of adequate briefing). Because the constitutionality of section 609.527, subdivision 4(b), was not raised or considered in district court and because the briefing is

inadequate to decide this issue, we will not apply the interests-of-justice exception to reach the merits of Crowder's constitutional claim.

**Affirmed in part, reversed in part, and remanded.**